MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger, Bar No. 095987
kent.roger@morganlewis.com
Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DIVA LIMOUSINE, LTD., individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       vs.<br><br>UBER TECHNOLOGIES, INC; RASIER, LLC; RASIER-CA, LLC; UBER USA, LLC; and UATC, LLC,<br><br>       Defendants. | Case No. 3:18-cv-05546-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY WARREN POSTMAN AND KELLER LENKNER LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      November 15, 2018<br>Time:     1:30 p.m.<br>Location:  Courtroom 5<br>Judge:    Hon. Edward M. Chen |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

## NOTICE OF MOTION AND MOTION

### TO THE CLERK AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 15, 2018, at 1:30 p.m., in Courtroom 5 of this Court, located at 450 Golden Gate Ave., 17th Fl., San Francisco, California, Defendants will and hereby do move, pursuant to the California Rules of Professional Conduct, Civil Local Rule 11-4, and the Court's inherent authority, for an order disqualifying Warren Postman and Keller Lenkner LLC, counsel to Plaintiff, from this action due to a conflict of interest.  Dkt. No. 38.

### ISSUES TO BE DECIDED

1.      Whether Warren Postman of Keller Lenkner LLC, previously a senior attorney for the Chamber Litigation Center of the U.S. Chamber of Commerce, and the recipient of confidential information from Chamber member Uber, including pursuant to a common interest agreement, should be disqualified from representing Plaintiff in this action due to an irreconcilable conflict of interest because its subject matter is substantially related to Mr. Postman's prior legal work with Uber.

2.      Whether Mr. Postman's conflict of interest is imputed to his law firm, Keller Lenkner LLC, also requiring that Keller Lenkner LLC be disqualified from this action.

Dated: October 24, 2018

    _/s/ Brian C. Rocca_
Brian C. Rocca
MORGAN, LEWIS & BOCKIUS LLP

*Attorneys for Defendants*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 3

    A.  Uber Works With The Chamber And Mr. Postman As Co-Plaintiffs In The Seattle Litigation ................................................................................................. 3

    B.  The Chamber Files Multiple Amicus Curiae Briefs In Support Of Uber In Litigation Involving The Enforceability Of Arbitration Agreements With Independent Contractor Drivers ............................................................................ 8

    C.  Mr. Postman Moves To Keller Lenkner And Initiates Litigation Against Uber ..................................................................................................................... 9

    D.  Uber Requests Keller Lenkner's Withdrawal From Representing Plaintiff In These Proceedings ...................................................................................... 10

III.  ARGUMENT ................................................................................................................. 11

    A.  Legal Standard ................................................................................................ 11

        1.  Disqualification Resulting From A Breach Of Duty of Confidentiality ................................................................................... 11

        2.  Disqualification When Matters Are Substantially Related ...................... 12

    B.  Mr. Postman Has A Conflict Of Interest That Requires Him To Be Disqualified From Representing Plaintiff In This Litigation ............................ 14

        1.  Mr. Postman Had A Duty Of Fidelity To Uber And Received Confidential Information Under The Common Interest Agreement Between The Chamber And Uber ............................................................. 14

        2.  Disqualification Is Necessary Because The Seattle Litigation Is "Substantially Related" To The Misclassification Issue In This Litigation ................................................................................................ 16

        3.  Disqualification Is Further Supported Because Of Mr. Postman's Work On Amicus Briefs Supporting Uber On Misclassification Issues ..................................................................................................... 17

    C.  Based On His Ability To Use Uber Confidential Information, Disqualification Of Mr. Postman Is Required To Safeguard The Integrity Of These Proceedings ........................................................................................ 18

    D.  Mr. Postman's Conflict Of Interest Is Imputed Directly To Keller Lenkner Which Also Must Be Disqualified ...................................................................... 19

IV.  CONCLUSION ............................................................................................................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

*A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli,*
   113 Cal. App. 4th 1072 (2003).................................................................................19

4

5

*All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.,*
   No. C 06-2915, 2008 WL 5484552 (N.D. Cal. 2008)...................................................... *passim*

6

7

*Bacchi v. Mass. Mut. Life Ins. Co.,*
   110 F. Supp. 3d 278, 283 (D. Mass. 2015) ................................................................18

8

*Chamber of Commerce of the United States of Am., v. Seattle,*
   No. 17-cv-00370-RSL (W.D. Wash. 2017) ..............................................................2, 6, 7, 16

9

*Chamber of Commerce v. Seattle,*
   890 F.3d 769 (9th Cir. 2018)...................................................................................4

10

11

*Comden v. Superior Court,*
   20 Cal. 3d 906 (1978) .........................................................................................11

12

13

*In re County of Los Angeles,*
   223 F.3d 990 (9th Cir. 2000)..................................................................................11

14

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*
   20 Cal. 4th 1135 (1999) ......................................................................................11

15

16

*DeSoto Cab Company, Inc. v. Uber Techs., Inc. et al.,*
   No. 4:16-cv-06385-JSW (N.D. Cal.) .........................................................................18

17

18

*Dynamex Operations W. v. Sup. Ct.,*
   4 Cal. 5th 903 (2018) ...........................................................................................9

19

*Flatt v. Superior Court,*
   9 Cal. 4th 275 (1994) ......................................................................................3, 12, 14, 19

20

21

*In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129,*
   902 F.2d 244 (4th Cir. 1990)..................................................................................12

22

23

*Jessen v. Hartford Casualty Ins. Co.,*
   111 Cal. App. 4th 698 (2003)...............................................................................13, 17

24

25

*Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Court, E. Dist. of California,*
   188 F. App'x 640 (9th Cir. 2006) ............................................................................13

26

*MMCA Group, Ltd., v. Hewlett-Packard Co.,*
   No. C-06-7067 MMC, 2007 WL 607659 (N.D. Cal. 2007)....................................................13

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ......................................................................................8, 17, 18

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
  69 Cal. App. 4th 223 (1999) ...........................................................................................3, 11, 13

*O'Connor et al v. Uber Technologies, Inc.*,
  Nos. 15-17420, 15-17422, 15-17475 (9th Cir. 2018) ..............................................................8

*O'Connor v. Uber Techs., Inc.*,
  No. 13-cv-03826-EMC ................................................................................................... *passim*

*Oliver v. SD-3C, LLC*,
  No. C 11-01260 JSW, 2011 WL 13156460 (N.D. Cal. 2011) ...........................................13, 14

*In re Pacific Pictures*,
  679 F. 3d 1121 (9th Cir. 2012) ...............................................................................................15

*River West, Inc. v. Nickel*,
  188 Cal. App. 3d 1297 (1987) ................................................................................................13

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) .......................................................................................13, 18, 19

*In re UMW Emp. Benefit Plans Litig.*,
  159 F.R.D. 307 (D.D.C. 1994) ...............................................................................................18

*United States v. Henke*,
  222 F.3d 633 (9th Cir. 2000) ............................................................................................12, 19

*ViChip Corp. v. Lee*,
  No. C 04-2914 PJH, 2004 WL 2780170 (N.D. Cal. 2004) .....................................................11

*William H. Raley Co. v. Sup. Ct.*,
  149 Cal. App. 3d 1042 (1983) ......................................................................................3, 11, 19

*Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*,
  559 F.2d 250 (5th Cir. 1977) ............................................................................................12, 19

**Statutes**

Civ. L.R. 11-4 ...............................................................................................................................11

Civil L.R. 11-4 ..............................................................................................................................11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii                                                          Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Code § 6068(e)(1) ............................................................................................12

National Labor Relations Act.............................................................................6

Seattle's Ordinance ...........................................................................................7

Sherman Act.......................................................................................................6

UPA.............................................................................................................10, 18

**Other Authorities**

Cal. Rules of Professional Conduct, Rule 3-310(E) .......................................12

California Rules of Professional Conduct Rule 3-310(E)....................11, 12, 13

Local Rule 11-3(a)(2).......................................................................................11

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

From 2015 until just four months ago, Warren Postman, as a senior attorney for the Litigation Center of the U.S. Chamber of Commerce ("the Chamber"),[1] worked closely with Uber[2] and its in-house and outside legal teams under a common interest agreement memorialized in correspondence with Mr. Postman.  He represented the Chamber in a case brought with Uber as co-plaintiffs—litigation substantially related to the subject matter at issue in this case, the classification of drivers as independent contractors.  Under their common interest agreement, Uber and the Chamber agreed their communications would remain privileged and confidential.

The common interest relationship not only is expressly documented but also is reflected in the course of dealing between Uber and Mr. Postman over several years.  In hundreds of emails, regularly scheduled teleconferences, and face-to-face meetings, Uber shared legal analysis and litigation strategy—core attorney work product—with Mr. Postman and the Chamber, including on the driver classification issue.  In matters before both the district court and federal courts of appeals, including in the very case to which the instant action has now been "related," Uber relied on and collaborated closely with Mr. Postman based on a well-founded expectation derived from its express common interest agreement with the Chamber.  Common interest agreements, after all, are designed to allow for open and forthright communication between parties with a "common interest" in litigation without waiving privilege.  The Chamber's Chief Counsel who worked alongside Mr. Postman definitively confirms his "consistent belief and understanding that all communications containing confidential information … received from counsel for Uber … however designated, would and should be kept confidential."  Lehotsky Decl., ¶ 23.

Four months ago, however, Mr. Postman left the Chamber, joined the newly-formed

---

[1] The Chamber Litigation Center is a separately incorporated non-profit affiliate of the Chamber of Commerce of the United States of America and "regularly files amicus briefs and commences affirmative litigation on behalf of the Chamber."  Declaration of Steven P. Lehotsky ("Lehotsky Decl."), ¶ 3.  Mr. Postman was Associate Chief Counsel for Litigation at the Chamber from 2015 to 2017.  *Id.* ¶ 5.  In 2017, he became Deputy Chief Counsel for Litigation and in January of this year, he became Vice President and Chief Counsel for Appellate Litigation.  *Id.*

[2] All references to Uber include Uber Technologies, Inc., Rasier, LLC and Uber USA, LLC, all members of the Chamber.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

Keller Lenkner LLC ("Keller Lenkner")—Plaintiff's lead law firm prosecuting this litigation—and filed this putative class action claiming that Uber engages in unfair competition by misclassifying drivers.[3]

Given its long professional relationship with Mr. Postman, Uber does not bring this motion lightly.  Uber is rightfully concerned about Mr. Postman's prior extensive access to privileged and confidential information *from* Uber, which could now be put to use in litigation *against* Uber.  The Chamber is similarly concerned.  Mr. Postman's own bio on the Keller Lenkner website highlights the ethical trap, as it touts the "unique insight" he gained by "[w]orking closely with senior in-house lawyers at some of the world's largest companies," while at the Chamber.[4]

Promptly after being retained here, counsel for Uber raised this issue with Plaintiff's counsel, asking Keller Lenkner to withdraw.  *See generally* Declaration of Brian C. Rocca ("Rocca Decl.").  Keller Lenkner has disclaimed any knowledge of a common interest agreement between Uber and the Chamber, inaccurately comparing Mr. Postman's interactions with Uber to those of casual discussions between attorneys and Chamber lawyers at Chamber events.  Such characterizations ignore the facts:

- Uber and the Chamber are *co-plaintiffs* in litigation challenging a Seattle ordinance—litigation in which Uber and the Chamber (represented by Mr. Postman) expressly alleged that "<u>drivers who use the Uber App to generate referrals are independent contractors, not employees.</u>"  *Chamber of Commerce of the United States of Am., v. Seattle,* No. 17-cv-00370-RSL, Dkt. No. 53, Am. Compl., ¶ 16 (emphasis added);

- Mr. Postman, a point-person for the Chamber-Uber relationship, was involved in the communications between Uber and the Chamber confirming their common-interest agreement in that litigation;

- Mr. Postman regularly received or sent communications marked "ATTORNEY CLIENT PRIVILEGED," "SUBJECT TO JOINT DEFENSE PRIVILEGE" and/or "COMMON INTEREST PRIVILEGE" related to the Seattle litigation and multiple

---

[3] Keller Lenkner has also demanded thousands of individual arbitrations against Uber on behalf of drivers, starting in late August 2018.  It was Mr. Postman who initiated contact with Uber about the arbitration demands, and he has been the primary point of contact since that time.  Those proceedings are in the initial phase, with arbitrators assigned only recently to the first few as of the date of this filing.  *See* Declaration of Andrew M. Sprchise ("Sprchise Decl."), ¶¶ 4-8.

[4] Mr. Postman's bio is available at https://www.kellerlenkner.com/warren-postman/.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

amicus briefs related to driver classification and arbitration issues; and

- Mr. Postman, on behalf of the Chamber, filed an amicus brief in support of Uber in *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, pending in this Court and listed by Plaintiff here on its Civil Cover Sheet as a "Related Case." *See* Dkt. No. 1-1.

Even after Uber provided these facts to Keller Lenkner, they refused to withdraw, leaving Uber no choice but to file this motion.

It is well-settled under California law that an attorney's receipt of confidential information from a non-client precludes that attorney and his law firm from representing a party adverse to the non-client in a substantially related matter. *See, e.g.*, *All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.,* No. C 06-2915, 2008 WL 5484552 at *4 (N.D. Cal. Dec. 18, 2008); *William H. Raley Co. v. Sup. Ct.,* 149 Cal. App. 3d 1042, 1047 (1983); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,* 69 Cal. App. 4th 223, 245 (1999).  In such a situation, the attorney must be disqualified in order to safeguard the integrity of the judicial process.

Given his prior role as one-half of the Chamber's two-person litigation team maintaining the day-to-day relationship with Uber, Mr. Postman has an irreconcilable conflict of interest that requires his disqualification from representing Plaintiff in these proceedings.  Mr. Postman has betrayed his common interest relationship with Uber by representing Plaintiff in this case.  Further, Mr. Postman's ethical violation is imputed to Keller Lenkner, in which he is a partner.  *Flatt v. Superior Court,* 9 Cal. 4th 275, 283-284 (1994).  Mr. Postman and Keller Lenkner's presence here is highly prejudicial to Uber; it has infected the proceedings to date and will continue to do so until rectified.  Accordingly, the Court should enter an order disqualifying Mr. Postman and Keller Lenkner from continuing their representation of Plaintiff in this action.

## II.     STATEMENT OF FACTS

### A.     Uber Works With The Chamber And Mr. Postman As Co-Plaintiffs In The Seattle Litigation

In December 2015, Seattle passed a municipal ordinance ("the Ordinance") that "authorizes a collective-bargaining process between 'driver coordinators'—like Uber Technologies (Uber), Lyft, Inc. (Lyft), and Eastside for Hire, Inc. (Eastside)—and independent

1  contractors who work as for-hire drivers." *Chamber of Commerce v. Seattle*, 890 F.3d 769, 775

2  (9th Cir. 2018).  At that time, Uber's legal counsel began working collaboratively with the

3  Chamber to consider the best legal strategy to challenge the Ordinance under antitrust and labor

4  laws.  Declaration of Jason B. Allen ("Allen Decl."), ¶ 7.  Mr. Postman was integrally involved in

5  these collaborative efforts from the very start.  *Id.*, ¶ 8; Lehotsky Decl., ¶ 22.[5]

6      From as early as December 2015, Uber exchanged confidential communications with the

7  Chamber about, for example:

8    - **Legal strategy and litigation tactics**.  *See* Lehotsky Decl., ¶ 14; Allen Decl., ¶
9      12(a)(i) and Ex. 1; *see also id.*, Ex. 2 ("the document provided high-level guidance on
       our litigation strategy and what we viewed as the main claims and issues we might
10      encounter")

11   - **Potential legal claims and defenses**.  *See* Lehotsky Decl., ¶ 14; Allen Decl.,
       ¶12(b)(ii) and Exs. 6, 7.

12   - **Threshold legal issues such as ripeness and standing**.  *See* Allen Decl., ¶ 12(c) and
       Exs. 2, 5, 8.

13

14      Uber shared these communications and attorney work product with Mr. Postman and the

15  Chamber under an express expectation that they would remain privileged and confidential

16  pursuant to their common interest agreement.  Allen Decl., ¶ 14 and Ex. 10; Bramer Decl., ¶¶ 13,

17  17.  The Chamber acted under the same expectation.  Lehotsky Decl., ¶¶ 14, 21, 23, 28; Allen

18  Decl., ¶ 16 and Ex. 11.  Although the common interest was repeatedly acknowledged and well-

19  documented, the Chamber did not believe that a formal common interest agreement was

20  necessary, and Uber concurred.  Allen Decl., ¶ 14-17 and Ex. 11.[6]

21      Pursuant to the common interest agreement between the Chamber and Uber, Chamber

22  attorneys, including Mr. Postman, "exchanged confidential information and attorney work

23
24  [5] Many of the documents attached to the Allen Declaration are redacted to protect the attorney-
    client privilege and attorney work product doctrine.  In filing this motion, Uber does not waive
    privilege over attorney-client communications and attorney work product—rather, it brings this
25  motion to protect them.  Allen Decl., ¶ 6; Declaration of Dalene Bramer ("Bramer Decl."), ¶ 4.

26  [6] Separate and apart from the common interest agreement, "[t]he Chamber has a written policy
    that requires employees, including lawyers, to '[o]bserve the confidentiality of information
27  acquired in carrying out one's duties and responsibilities, except where disclosure is approved by
    the Chamber or legally mandated. Confidential information includes, but is not limited to, all non-
28  public information about the Chamber or its members.'"  Lehotsky Decl., ¶ 6.  Mr. Postman was
    required annually to "sign certifications that [he] had read and understood" the policy.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1   product with in-house counsel for Uber in written communications and oral communications, the

2   latter of which took place during regularly scheduled telephone conferences and in face-to-face

3   meetings." Lehotsky Decl., ¶ 14; *see also* Allen Decl., ¶ 19 and Ex. 12.

4           Uber's and the Chamber's respective legal teams (including Mr. Postman) met face-to-

5   face in Washington, D.C. on January 14, 2016 under a common interest agreement to carefully

6   plan a joint legal strategy related to the Ordinance.  Bramer Decl. ¶¶ 8-13 and Exs. 1, 2.  During

7   that meeting, the parties discussed independent contractor issues and their intersection with

8   antitrust and labor laws.  *Id.*, ¶ 11.  In March 2016, after preliminary and confidential discussions

9   with Uber, the Chamber—on behalf of its members, including Uber—filed a lawsuit in Seattle

10  challenging the Ordinance under labor and antitrust law.  Lehotsky Decl., ¶ 15; Allen Decl., ¶ 17.

11          During this time frame, Mr. Postman was Deputy Chief Counsel for Litigation of the

12  Chamber's Litigation Center.  Lehotsky Decl., ¶ 5.  He knew that the Chamber had entered into,

13  and acted consistently with, this common interest agreement, as he was a party to the

14  communications acknowledging its existence and the parties' mutual expectation of

15  confidentiality.  Allen Decl., ¶¶ 14-16 and Exs. 10-11; Lehotsky Decl., ¶¶ 6, 13, 22-23.  He was

16  included in hundreds of written communications related to the Ordinance:  responding to queries

17  or asking for confidential information; offering and receiving advice on legal strategy; providing

18  and receiving legal analysis of issues related to the classification of independent contractors; and

19  attending regularly scheduled telephone conferences.  *E.g.* Allen Decl., ¶¶ 12(a)(i), 19, 21 and

20  Exs. 2, 12-13; Lehotsky Decl., ¶¶ 7 and 22.

21          Uber and the Chamber agree that (i) they entered into a common interest agreement by

22  December 2015 for the purpose of pursuing a joint legal strategy as to the Seattle Ordinance; (ii)

23  they shared privileged information and attorney work product under the agreement; and (iii) Mr.

24  Postman was intimately involved at every step along the way.  Allen Decl., ¶ 5; Lehotsky Decl., ¶

25  13; Bramer Decl., ¶¶ 7, 17.  Notwithstanding Mr. Postman's departure from the Chamber, that

26  common interest agreement still remains in effect today, as Uber and the Chamber continue the

27  Seattle litigation as co-plaintiffs.

28          On January 20, 2017, Mr. Postman visited Uber headquarters to meet with Uber's in-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

house employment counsel, Dalene Bramer, to discuss "the L&E issues Uber is focused on, as well as any other litigation priorities." Bramer Decl., ¶¶ 14-15 and Ex. 3. During that meeting, Mr. Postman and Ms. Bramer discussed Uber's independent contractor business model, and Mr. Postman, having listened to Uber's legal opinion, presented himself as 100% aligned with Uber on those issues. *Id.*, ¶ 16.

A few months later, in March 2017, Mr. Postman shared legal advice with Uber related to "independent contractor classification." Allen Decl., Ex. 13.

The following month, in April 2017, the Chamber and Uber, as co-plaintiffs, jointly filed a complaint in the Western District of Washington challenging the Ordinance. *See Chamber of Commerce v. City of Seattle,* No. 2:17-cv-00370-RSL (W.D. Wash. filed on April 11, 2017), Dkt. No. 53 (the "*Seattle* Am. Compl.").[7] The Chamber, represented by Mr. Postman and others, and Uber challenged the Ordinance as violative of the Sherman Act and preempted by the National Labor Relations Act. *See Seattle* Am. Compl., ¶ 10. They alleged, *inter alia*, that the Ordinance, which identifies drivers with transportation network companies ("TNCs") as independent contractors, authorized collective bargaining by these independent contractors to unlawfully fix the price they pay for using ride-referral technology. *Id.* ¶¶ 1, 8.[8]

The *Seattle* Amended Complaint repeatedly addressed and supported the classification by TNCs, such as Uber's subsidiary Rasier, LLC, of drivers as independent contractors. For example:

- "For-hire drivers who use the Uber App to generate referrals are independent contractors, not Uber employees." *Seattle* Am. Compl., ¶ 16.

- "Absent judicial intervention, the City of Seattle and thousands of other municipalities would be free to adopt their own disparate regulatory regimes, which would balkanize the market for independent-contractor services and inhibit the free flow of commerce among private service providers around the Nation." *Id.* ¶ 2.

---

[7] The Chamber's initial lawsuit, filed in March 2016, was dismissed in August 2016 on ripeness grounds. *See* Lehotsky Decl., ¶ 15. The second lawsuit was filed in March 2017 and amended in April 2017 with Rasier LLC as a named co-plaintiff. *Id.*, ¶¶ 16-17.

[8] Jason Allen, one of Mr. Postman's primary contacts at Uber for the *Seattle* litigation, is the same in-house attorney overseeing the instant case. Allen Decl., ¶¶ 4, 7, 8.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

- "The unfettered ability of individuals to go into business for themselves has long been an important engine of American economic growth."  *Id.* ¶ 3.

- "This innovation has dramatically increased the flexibility of independent contractors to conduct business."  *Id.* ¶ 4.

- "Federal law has traditionally allowed the competitive market to regulate these private agreements between independent economic actors free from governmental interference."  *Id.* ¶ 5.

- "Many traditional taxicab and limousine companies have long used flexible independent-contractor arrangements to provide services to customers."  *Id.* ¶ 7.

- "The City of Seattle's Ordinance would restrict the market freedom relied upon by all for-hire drivers who are part of independent-contractor arrangements, whether with a transportation-app company, a traditional taxicab company, or a limousine service."  *Id.* ¶ 8.

Critically, "[Mr. Postman] was involved in the drafting and editing of the complaint in that suit … including portions of the complaints that pleaded that drivers using the Uber app were independent contractors, and not employees …. Drafts of the complaint exchanged via email between counsel for the Chamber, including Mr. Postman, and counsel for Uber were marked as 'Common-Interest Privilege.'"  Lehotsky Decl., ¶ 22; *see also id.* ¶ 15.

Uber and the Chamber frequently exchanged confidential and privileged communications on the driver classification issue, starting with initial discussions regarding the Ordinance and throughout the course of jointly litigating against Seattle as co-plaintiffs.  For example, before the *Seattle* Amended Complaint was filed, Uber shared with Mr. Postman legal analyses and strategies related to the classification issue.  Allen Decl., Ex. 7.  Throughout their work together on the Seattle Ordinance, "[b]eginning in 2015, Mr. Postman … regularly received communications from in-house counsel at Uber marked as 'COMMON INTEREST PRIVILEGE,' or similar designations such as 'JOINT DEFENSE PRIVILEGE' 'ATTORNEY-WORK PRODUCT,' or 'PRIVILEGED AND CONFIDENTIAL.'"  Lehotsky Decl., ¶ 13; *see also* Allen Decl., ¶¶ 12(a)(ii), 18 and Exs. 3, 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

**B.**     **The Chamber Files Multiple Amicus Curiae Briefs In Support Of Uber In Litigation Involving The Enforceability Of Arbitration Agreements With Independent Contractor Drivers**

Over the last several years, the Chamber, led by Mr. Postman, also filed appellate amicus briefs in alleged misclassification suits brought against Uber *supporting* Uber's position that these suits should be sent to arbitration pursuant to driver agreements which classify the drivers as independent contractors.  *See, e.g.* Brief for U.S. Chamber of Commerce as Amicus Curiae, *Mohamed v. Uber Technologies, Inc.,* 848 F.3d 1201 (9th. Cir. 2016) ("*Mohamed* Amicus Brief); Brief for U.S. Chamber of Commerce as Amicus Curiae, *O'Connor et al v. Uber Technologies, Inc.,* Nos. 15-17420, 15-17422, 15-17475 (9th Cir. 2018) ("*O'Connor* Amicus Brief").[9]  "Mr. Postman was the lead day-to-day lawyer for each of these briefs."  Lehotsky Decl., ¶¶ 24-25. Indeed, one of these briefs was filed in *O'Connor*, to which the instant case has now been related based on Plaintiff's request.

The Chamber, as amicus, with Mr. Postman as one of its counsel, took the same position in each of these cases: (i) the court must treat contracts containing arbitration agreements in the same manner and on the same footing as those contracts not containing arbitration agreements, and (ii) the arbitration agreements in Uber's contracts with its independent contractor drivers are enforceable.  *See* Lehotsky Decl., Ex. 1 (*O'Connor* Amicus Brief) at 4, 12 (Courts must not "engage in interpretative gymnastics to invalidate agreements to arbitrate," but rather, "rigorously enforce arbitration agreements, like any other contract, according to their terms."); Ex. 2 (*Mohamed* Amicus Brief) at 7 ("[A] court may not… in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements.").

As part of its work on these amicus briefs, Mr. Postman "engaged with in-house counsel for Uber to discuss overall strategy," and exchanged draft work product with Uber's outside counsel pursuant to their common interest in the appeals.  Lehotsky Decl., ¶ 25; Declaration of Theane Evangelis ("Evangelis Decl."), ¶¶ 6-8.  These communications were marked "Joint

---

[9] These amicus briefs and two others are attached to the Lehotsky Decl. as Exhibits 1-4.

1 Defense Privilege." Evangelis Decl., Ex. 5. Mr. Postman knew they were confidential. *Id.*, ¶

2 8(a) and Ex. 4 (Mr. Postman assuring Uber's outside counsel that "[w]e obviously wouldn't share

3 [the draft appellate brief] beyond the Lit Center and [Chamber outside counsel] Mayer Brown.").

4   As recently as May 2018, and shortly before he left the Chamber to join Keller Lenkner,

5 Mr. Postman notified Uber (and other members of the Chamber's Labor and Employment

6 Litigation Advisory Committee) about a petition for rehearing before the California Supreme

7 Court in *Dynamex Operations W. v. Sup. Ct.*, 4 Cal. 5th 903 (2018), now the centerpiece of

8 Plaintiff's complaint here, and he provided his legal assessment of that petition. Bramer Decl., ¶

9 19 and Ex. 5. He also informed members that the Chamber intended to file an amicus brief

10 supporting that petition and solicited "additional thoughts" from members, including Uber, about

11 the Chamber's legal strategy. *Id.* The Chamber subsequently submitted an amicus curiae letter

12 supporting Dynamex's request for rehearing and arguing that the newly announced ABC test in

13 California should not be applied retroactively, a position directly contrary to Plaintiff's legal

14 position here.[10] The letter was submitted while Mr. Postman still managed amicus strategy for

15 the Chamber as Vice President and Chief Counsel for Appellate Litigation. Lehotsky Decl., ¶ 5.

16   **C.** **Mr. Postman Moves To Keller Lenkner And Initiates Litigation Against Uber**

17   On May 11, 2018, Mr. Postman sent Uber the Ninth Circuit's opinion in the Seattle

18 Ordinance case, stating in his cover email: "Victory in Seattle! I have not yet read, but wanted

19 you to have it right away!" Allen Decl., ¶ 25 and Ex. 17; Lehotsky Decl., ¶ 26. Mr. Postman had

20 worked with Uber on the Seattle litigation from its inception through a successful Ninth Circuit

21 appeal, going so far as to exchange his own redlines of appellate briefing with co-appellant Uber.

22 Allen Decl., ¶ 23 and Ex. 15; Lehotsky Decl., ¶¶ 12, 22.

23   A month later, Mr. Postman left the Chamber to join Keller Lenkner. Lehotsky Decl., ¶

24 27. Two short months later, Mr. Postman and Keller Lenkner began sending arbitration demands

25 to Uber on behalf of drivers claiming they were misclassified. Spurchise Decl., ¶ 4. In response,

26

27 [10] The Chamber's amicus letter is available at
https://www.chamberlitigation.com/cases/dynamex-operations-west-inc-v-superior-court-los-

28 angeles-0.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9 Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

outside counsel for Uber promptly notified Mr. Postman that his actions against Uber were improper due to Mr. Postman's prior work with Uber while at the Chamber. *Id.*, ¶ 5. Specifically, Uber advised Mr. Postman and Keller Lenkner that it will seek disqualification upon the appointment of an arbitrator. *Id.*, ¶¶ 7-8 and Exs. 1-2.

On September 10, 2018, Mr. Postman and Keller Lenkner, along with Robins Kaplan LLP ("Robins Kaplan"),[11] brought this suit against Uber, alleging violations of (1) California's Unfair Competition Law ("UCL") based on the misclassification of drivers, and (2) California's Unfair Practices Act ("UPA"). Dkt. No. 1 (Complaint), ¶¶ 136-149. Plaintiff designated this matter as "related" to the *O'Connor* litigation—the same litigation in which Mr. Postman *supported Uber* on behalf of the Chamber. *See* Dkt. No. 1-1; Lehotsky Decl., ¶¶ 24-25; Evangelis Decl., ¶¶ 4-5.

Thus, despite acquiring Uber's confidential information for nearly three years under a common interest agreement, including information on Uber's litigation tactics, legal analysis and strategy related to the classification of drivers with Uber, Mr. Postman is now actively representing drivers in individual arbitrations and a putative class of competitors in this litigation, seeking to reclassify those same drivers as Uber's employees.

### D. Uber Requests Keller Lenkner's Withdrawal From Representing Plaintiff In These Proceedings

Promptly after noticing their appearance here on October 5, 2018, Uber's outside counsel contacted Keller Lenkner on October 10, 2018 requesting its withdrawal. Rocca Decl., ¶ 2 and Ex. 1. On October 12, 2018, Keller Lenkner responded and refused to withdraw. *Id.*, ¶ 3 and Ex. 2. After further meeting and conferring, on October 16, 2018, Uber provided more information regarding Mr. Postman's work with Uber while at the Chamber. *Id.*, ¶ 6 and Ex. 4. Keller Lenkner responded that day refusing to withdraw from the representation. *Id.*, ¶ 7 and Ex. 5. The parties then stipulated to, and the Court ordered, a process for resolving this issue. Dkt. No. 38. Defendants now bring this motion to disqualify.

---

[11] In bringing this motion only against Keller Lenkner at this time, Uber is not waiving, and expressly reserves, the right to seek disqualification of any other lawyers in this action if warranted by the circumstances.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1    **III.    ARGUMENT**

2        **A.    Legal Standard**

3        Motions to disqualify counsel are decided under state law.  *In re County of Los Angeles*,

4    223 F.3d 990, 995 (9th Cir. 2000).  Disqualification is within the discretion of the trial court as an

5    exercise of its inherent powers.  *ViChip Corp. v. Lee*, No. C 04-2914 PJH, 2004 WL 2780170, at

6    *1 (N.D. Cal. Dec. 3, 2004) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)).

7    In reviewing a motion for disqualification, the "paramount concern must be to preserve public

8    trust in the scrupulous administration of justice and integrity of the bar.  The recognized and

9    important right to counsel of one's choosing must yield to considerations of ethics that run to the

10   very integrity of our judicial process."  *Comden v. Superior Court*, 20 Cal. 3d 906, 915 (1978).[12]

11   In addition, this Court has adopted the California Rules of Professional Conduct at Civ. L.R. 11-4

12   ("Standards of Professional Conduct"),[13] and attorneys practicing in this Court are required to

13   adhere to those standards.  *ViChip*, WL 2780170, at *1.

14       An attorney who has received confidential information from a non-client is precluded—

15   along with his law firm—from representing a party adverse to the non-client in a substantially

16   related matter.  *See, e.g., All American Semiconductor*, 2008 WL 5484552, at *4; *William H.*

17   *Raley Co.*, 149 Cal. App. 3d at 1047; *Morrison Knudsen Corp.*, 69 Cal. App. 4th at 245.  In such

18   a situation, the attorney must be disqualified in order to safeguard the integrity of the judicial

19   process.  That is precisely the situation here.

20           **1.    Disqualification Resulting From A Breach Of Duty of Confidentiality**

21       Under California law, a relationship between an attorney and *non-client* gives rise to a

22   duty of confidentiality "(i) where an attorney's relationship with a person or entity creates an

23   ─────────────────────

24   [12] In addition, the court should consider "an attorney's interest in representing a client, the
     financial burden on a client to replace the disqualified counsel, and the possibility that tactical

25   abuse underlies the disqualification motion."  *People ex rel. Dept. of Corporations v. SpeeDee Oil
     Change Systems, Inc.*, 20 Cal. 4th 1135, 1145 (1999).

26   [13] Civil Local Rule 11-3(a)(2) requires an attorney applying to appear pro hac vice to submit an
     oath "agree[ing] to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4."

27   Civ. L.R. 11-4(a)(1) requires all members of the bar of this Court and attorneys permitted to
     practice before the Court pro hac vice to be "familiar and comply with the standards of

28   professional conduct required of members of the State Bar of California," including Rule 3-
     310(E) of the California Rules of Professional Conduct.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                              Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1    expectation that the attorney owes a duty of fidelity, and (ii) where the attorney has acquired

2    confidential information in the course of such a relationship that will be, or may appear to the

3    person or entity to be, useful in the attorney's representation in an action on behalf of the client."

4    *All American Semiconductor*, 2008 WL 5484552 at *4 (disqualifying plaintiff's law firm after an

5    attorney that received confidential information about the defendant, a non-client, pursuant to joint

6    defense agreement, joined the firm); *see* Cal. Rules of Professional Conduct, Rule 3-310(E); Cal.

7    Bus. & Profs. Code § 6068(e)(1).

8         Where an attorney has acquired confidential information pursuant to a common interest or

9    joint defense agreement, it precludes the attorney from being adverse to a non-client in a matter

10   that could enable a breach of the duty of confidentiality.  *United States v. Henke,* 222 F.3d 633,

11   637 (9th Cir. 2000) ("a joint defense agreement establishes an implied attorney-client relationship

12   with the co-defendant").  "[W]hether the jointly interested persons are defendants or plaintiffs…

13   the rationale for the joint defense rule remains unchanged: persons who share a common interest

14   in litigation should be able to communicate with their respective attorneys and with each other to

15   more effectively prosecute or defend their claims."  *In re Grand Jury Subpoenas, 89-3 & 89-4,*

16   *John Doe 89-129,* 902 F.2d 244, 249 (4th Cir. 1990).  Thus an attorney who is the recipient of

17   information shared between co-parties "breaches his fiduciary duty if he later, in his

18   representation of another client, is able to use this information to the detriment" of a co-party.

19   *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir. 1977).

20        In such a situation, as here, an attorney assumes ethical duties to a non-client, as it would

21   to his or her own client, and is subject to Cal. Rule of Professional Conduct 3-310(E).  *See* Rule

22   3-310(E) ("member shall not, without the informed written consent of the client or former client,

23   accept employment adverse to the client or former client where, by reason of the representation of

24   the client or former client, the member has obtained confidential information material to the

25   employment.")

26              **2.    Disqualification When Matters Are Substantially Related**

27        To determine whether an attorney has confidential information that is "material," courts

28   evaluate whether the former and the new matters are substantially related.  *Flatt*, 9 Cal. 4th at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                                Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

283-284.  Specifically, courts consider whether the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *All American Semiconductor*, 2008 WL 5484552 at *5 (quoting *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal. App. 4th 698, 713 (2003)); *Morrison Knudsen,* 69 Cal. App. 4th at 234 (material information includes the "identity of all the key decision makers," the "litigation philosophy," and the "organizational structure" of the past client).  The court must also examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy.  *All American Semiconductor*, 2008 WL 5484552 at *5 (citing *Morrison Knudsen,* 69 Cal. App. 4th at 234).

"Courts have counseled against construing the 'substantial relationship' test too narrowly." *Oliver v. SD-3C, LLC*, No. C 11-01260 JSW, 2011 WL 13156460, at *3 (N.D. Cal. Aug. 4, 2011).  Courts, therefore, "ascribe to the word 'subjects' a broader definition than the discrete legal and factual issues involved in the compared representations." *Jessen*, 111 Cal. App. 4th at 712.[14]  This is because a broad relationship test serves "the most important facet of the professional relationship… If there is a reasonable probability that confidences were disclosed which *could* be used against the client in later, adverse representation, a substantial relation between the two cases is *presumed*." *Trone*, 621 F.2d at 998 (emphasis added).  So, for example, in *Oliver*, the court disqualified counsel "[d]espite the lack of overlapping identical factual or legal issues" because his interactions "with in-house counsel" and others at the company as part of his prior representation "would have revealed confidential information which would be

---

[14] *See also Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) ("Substantiality is present if the factual contexts of the two representations are similar or related."); *Lewis C. Nelson & Sons, Inc. v. U.S. Dist. Court, E. Dist. of California*, 188 F. App'x 640, 642 (9th Cir. 2006) ("Precise identity between the issues in the prior and current representation cases is not required."); *MMCA Group, Ltd., v. Hewlett-Packard Co.*, No. C-06-7067 MMC, 2007 WL 607659 at *4 (N.D. Cal. Feb. 23, 2007) ("California courts do not require that the legal and factual issues raised in the prior representation be identical to those raised in the current representation."); *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1303 (1987) (imposing low threshold test of proof upon aggrieved party because it was best method to ensure the "lawyer's duty of absolute fidelity be enforced and the spirit of [Rule 3-310(E)] relating to privileged communications be maintained").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1  relevant and material to the 'evaluation, prosecution, settlement or accomplishment of the current

2  representation.'"  *Oliver*, 2011 WL 13156460, at * 4 (quoting *Jessen*, 111 Cal. App. 4th at 713).

### B.   Mr. Postman Has A Conflict Of Interest That Requires Him To Be Disqualified From Representing Plaintiff In This Litigation

5  Here, Mr. Postman has an irreconcilable conflict of interest arising from his previous

6  relationship with Uber while he was employed by the Chamber and working on matters

7  substantially related to this case.  That irreconcilable conflict creates a presumption of

8  disqualification under the circumstances of this case.  *Flatt,* 9 Cal. 4th at 283 ("Where the

9  requisite substantial relationship between the subjects of the prior and the current representations

10  can be demonstrated, access to confidential information by the attorney in the course of the first

11  representation…is *presumed*") (emphasis added).

### 1.   Mr. Postman Had A Duty Of Fidelity To Uber And Received Confidential Information Under The Common Interest Agreement Between The Chamber And Uber

14  The common interest agreement between the Chamber and Uber gave rise to a duty of

15  confidentiality because (1) the agreement created a duty of fidelity by Mr. Postman to Uber and

16  (2) Mr. Postman received confidential information pursuant to the agreement.  *All American*

17  *Semiconductor*, 2008 WL 5484552, at *4-5.

18  The Chamber and Uber had a common interest agreement starting by December 2015.

19  Allen Decl., ¶ 18; Lehotsky Decl., ¶¶ 13-14.  The parties expressly conveyed their expectations

20  that Uber and the Chamber had a common interest in challenging the Seattle Ordinance and that

21  their attorneys would preserve the confidentiality of the communications.  Allen Decl., ¶¶ 15-16,

22  19 and Exs. 10-12; Lehotsky Decl., ¶¶ 13-14, 23.  They exchanged privileged information and

23  attorney work product through written communications, during regularly scheduled telephone

24  conferences, and in face-to-face meetings.  *See* Section II.A, above.  They communicated about

25  legal strategy, legal analysis, litigation tactics, and other confidential and/or privileged

26  information, including information regarding the classification of drivers as independent

27  contractors.  *Id*.  Many of those communications were explicitly marked as privileged.  *Id*.  As

28  Mr. Postman's former colleague, and the Senior Vice President and Chief Counsel of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1    Chamber attests: "I believe that, although he was never an attorney for Uber, Uber's counsel

2    trusted and had great confidence in Mr. Postman due to our mutual common interests on

3    independent-contractor litigation matters."  Lehotsky Decl., ¶ 21; *see also* Allen Decl., ¶ 5;

4    Bramer Decl., ¶¶ 16, 20.

5         It is immaterial that Uber and the Chamber did not enter into a "formal" common interest

6    agreement.  A common interest agreement need not be reduced to a formal written contract.

7    "Instead, the parties must make the communication in pursuit of a joint strategy in accordance

8    with some form of agreement—whether written or unwritten."  *In re Pac. Pictures,* 679 F. 3d

9    1121, 1129 (9th Cir. 2012).  The actions of the parties, not any formal agreement, dictate the

10   privileged nature of their communications. And, in any event, the agreement here *was*

11   memorialized in correspondence, and all parties demonstrated their understanding of its import.

12        The actions of Mr. Postman and the Chamber, and their relationship with Uber, "create[d]

13   an expectation that [Mr. Postman] owes a duty of fidelity" to Uber.  *See All American*

14   *Semiconductor*, 2008 WL 5484552 at *4.  Mr. Postman assumed a pivotal role in the Seattle

15   litigation.  He spent almost three years working on the Seattle litigation with Uber, regularly

16   participating in strategic communications and phone conferences with Uber on the Chamber's

17   behalf.  *See* Section II.A, above.  Mr. Postman was integrally involved in the development and

18   prosecution of the Seattle litigation from the start and at every step of the litigation through its

19   successful appeal.  *Id*.  Indeed, Mr. Postman notified Uber of a "victory in Seattle," after the

20   Ninth Circuit delivered its opinion.  Allen Decl., Ex. 17.  Mr. Postman's duty of fidelity is further

21   confirmed by his required acknowledgement of Chamber policy to "[o]bserve the confidentiality"

22   of "all non-public information about the Chamber or its members," including Uber, which he

23   "acquired in carrying out [his] duties and responsibilities."  Lehotsky Decl., ¶ 6.

24        Mr. Postman also received confidential and privileged information under the common

25   interest agreement.  He sent or received a multitude of communications involving the Seattle

26   litigation—many of which had express privilege markers—for the purpose of pursuing a joint

27   legal strategy.  *See* Section II.A, above.  Both parties reasonably expected the attorneys working

28   on these common legal strategies would preserve the confidentiality of the communications.  *Id*.

Under either test set out in *All American Semiconductor*, Mr. Postman owes Uber an ongoing duty of confidentiality.  He cannot fulfill that duty, as a matter of law, if he is representing parties in litigation *against* Uber.

### 2. Disqualification Is Necessary Because The Seattle Litigation Is "Substantially Related" To the Misclassification Issue In This Litigation

Disqualification is necessary in this case because (i) the factual and legal issues underlying Plaintiff's purported UCL claim are substantially related to the Seattle litigation, where Uber and the Chamber are co-plaintiffs, and (ii) Mr. Postman received confidential information on legal analysis and strategy related to driver classification issues, giving him unique visibility into Uber's approach to litigation and overall defense of its business model.

Here, Plaintiff alleges that Uber is engaging in unfair competition by misclassifying its drivers as independent contractors.[15]  By comparison, the Seattle litigation *also* required consideration of Uber's classification of drivers on its platform as independent contractors.  The *Seattle* Amended Complaint outlined the typical business model adopted by TNCs, the reasons why drivers are classified as independent contractors, the way in which these companies use technology, the industry licensing requirements, and the impact these companies have on the economy.  *See Seattle* Am. Compl., ¶ 25 ("Many drivers working in the for-hire transportation industry have traditionally operated as independent contractors, and this tradition continues today."); ¶ 28 ("Fares vary based on the length of the ride, quality of the vehicle requested, and the time of day and the day of the week."); ¶ 29 ("Drivers who receive ride requests from these software apps choose when they work, choose where they work, and operate in their own vehicle. These flexible, driver-selected schedules permit a stay-at-home dad to work only while his children are at school, or a student to work between her classes or on weekends."); ¶ 30 ("Drivers may, if they choose to, contract with more than one service, driving with a black-car company or

---

[15] While Defendants dispute Plaintiff's position on Uber's classification and intend to move to dismiss on multiple grounds, Keller Lenkner has already improperly filed a premature motion for partial summary judgment on the misclassification issue (Dkt. No. 33).  This premature motion for partial summary judgment further highlights the potential risk to Uber from Keller Lenkner using privileged and confidential information against Uber in this litigation.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

a limousine service one day, Uber for one day, Lyft the next day.").

Mr. Lehotsky, counsel for Uber's co-plaintiff, the Chamber, unambiguously acknowledges the substantial overlap between the two litigation.  *See* Lehotsky Decl., ¶¶ 9-20. He identifies "the classification of drivers as employees or independent contractors as an important issue" because the disputed Seattle Ordinance "applied only to those individuals classified as independent contractors."  Lehotsky Decl., ¶ 11.  Indeed, the Chamber's complaint "did not plead that drivers using the Uber App were independent contractors under Washington law; it pleaded *categorically* that they are independent contractors." *Id.*, ¶ 20 (emphasis added).

Thus, Uber's and the Chamber's coordination on the Seattle litigation required "Mr. Postman and [Mr. Lehotsky]" to engage in "repeated confidential discussions with in-house counsel at Uber" to fashion legal strategy related to the classification of drivers with Uber and determine "how the ordinance would affect companies that have independent contractors, rather than employees, providing transportation to riders." *Id.*, ¶ 10.

It does not matter that the claims raised in the Seattle litigation are not identical to the claims brought here.  Rather, because the "factual and legal issues" in the Seattle litigation related to classification of drivers are also "material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues," the matters are "substantially related." *Jessen*, 111 Cal. App. 4th at 713.  Moreover, as detailed above, Mr. Postman's work on the Seattle litigation was extensive, and he received confidential information through the common interest agreement between the Chamber and Uber on the "factual and legal issues" that overlap with this case.

### 3. Disqualification Is Further Supported Because Of Mr. Postman's Work On Amicus Briefs Supporting Uber On Misclassification Issues

Uber and the Chamber also shared confidential communications related to the amicus briefs submitted by the Chamber in support of Uber's positions in the appeals for *Mohamed* and *O'Connor*.  *See* Section II.B, above.  Some of these communications, particularly with respect to draft briefs, were marked privileged.  *Id.*  Courts have found communications between a trade

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1   association and its members regarding an amicus brief or between a litigant and a party appearing

2   as amicus to be privileged.  *See Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 278, 283 (D.

3   Mass. 2015) (holding that privilege regarding communications related to an amicus brief "filed in

4   litigation" was not waived because "communications between [trade association member] and the

5   Association's respective counsel related to a legal matter and were made with an expectation of

6   confidentiality"); *In re UMW Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 313-14 (D.D.C. 1994)

7   (holding that some communications between litigant and party that filed amicus briefs were

8   subject to the common interest rule preventing disclosure).

9       "During his tenure at the Litigation Center," Mr. Postman, "played a leading role for the

10   Chamber on independent-contractor misclassification lawsuits."  Lehotsky Decl., ¶ 7.  He was

11   intimately involved in the amicus briefs the Chamber filed in support of Uber's position in

12   *Mohamed* and *O'Connor*.  Lehotsky Decl., ¶¶ 24-25.  He was also the point person at the

13   Chamber with whom Uber and Uber's outside counsel communicated confidential and privileged

14   information regarding legal strategy related to these amicus briefs, and his name appears as

15   counsel for the Chamber on each of these briefs.  Evangelis Decl., ¶¶ 4-6.  Having listed

16   *O'Connor* as a "Related Case" on its Civil Cover Sheet, Keller Lenkner cannot credibly argue

17   that it is not substantially related to this litigation.[16]

18   **C.    Based On His Ability To Use Uber Confidential Information, Disqualification**
         **Of Mr. Postman Is Required To Safeguard The Integrity Of These**

19   **Proceedings**

20       "Disqualification does not depend upon proof of the abuse of confidential information.

21   Because of the sensitivity of client confidence and the profession's institutional need to avoid

22   even the appearance of a breach of confidence, disqualification is required when lawyers change

23   sides in factually related cases."  *Trone*, 621 F.2d at 1001.  Thus, when a conflict of interest

24   arises, and the requisite substantial relationship between an attorney's former and current

25   _____

26   [16] Plaintiff *did not* list *DeSoto Cab Company, Inc. v. Uber Techs., Inc. et al.,* No. 4:16-cv-06385-
     JSW (N.D. Cal.), as a related case even though the *DeSoto* plaintiff also brought a UPA claim

27   against Uber alleging below-cost pricing.  Thus, Plaintiff believes its case is *more* related to
     *O'Connor* than to a case that alleged an identical claim based on the same facts brought by a

28   company that is ostensibly a member of Plaintiff's putative class.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18                                          Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1 representations has been established, disqualification is mandatory to safeguard the integrity of

2 the judicial process. *All American Semiconductor*, 2008 WL 5484552 at *7 (citing *Flatt*, 9 Cal.

3 App. 4th at 283); *see also Henke*, 222 F. 3d at 637 ("This privilege can also create a disqualifying

4 conflict where information gained in confidence by an attorney becomes an issue….").

5      This is not a case in which disqualification will prejudice Plaintiff.  Uber has neither

6 delayed in moving for disqualification nor engaged in any tactical abuse, having moved promptly

7 after retaining its own counsel. *See generally* Rocca Decl.  Rather, Mr. Postman's opportunistic

8 decision to represent Plaintiff after receiving Uber's confidential information presents the only

9 tactical abuse in this litigation.  Uber is prejudiced by Mr. Postman's and Keller Lenkner's

10 representation *whether or not* Mr. Postman has used or will use this information against

11 Defendants.  Instead, it is Mr. Postman's *ability* to use this information that requires his

12 disqualification. *Wilson P. Abraham*, 559 F.2d at 253 (an attorney who is the recipient of

13 information shared between co-parties "breaches his fiduciary duty if he later, in his

14 representation of another client, *is able* to use this information to the detriment" of one of the co-

15 parties) (emphasis added); *see also Trone,* 621 F.2d at 1002 (disqualifying attorney because "the

16 *appearance* of a fair trial for [the defendant] cannot be guaranteed while [the attorney] is present

17 in the courtroom on behalf of plaintiffs, even as co-counsel") (emphasis added).

### D.      Mr. Postman's Conflict Of Interest Is Imputed Directly To Keller Lenkner Which Also Must Be Disqualified

20      Under California law, an attorney's conflict of interest is imputed to his entire law firm.

21 "As a general rule, if a lawyer is required… to withdraw from employment under a Disciplinary

22 Rule, no other lawyer affiliated with him or his firm may continue such employment." *William H.*

23 *Raley,* 149 Cal. App. 3d at 1048.  Thus, "[a]n attorney's disqualifying conflict of interest must

24 inevitably lead to the firm's vicarious disqualification to assure the preservation of [] confidences

25 and the integrity of the judicial process." *A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli,* 113

26 Cal. App. 4th 1072, 1078 n.4 (2003); *see also Flatt,* 9 Cal. 4th at 283 ("Where the requisite

27 substantial relationship between the subjects of the prior and the current representations can be

28 demonstrated, access to confidential information by the attorney in the course of the first

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1    representation…is *presumed* and disqualification of the attorney's representation of the second

2    client is mandatory; indeed, the disqualification extends vicariously to the entire firm.").

3          As Mr. Postman is a partner at Keller Lenkner, his disqualification extends vicariously to

4    Keller Lenkner as well.  Mr. Postman's disqualifying status is compounded by the fact that he

5    also is personally representing Plaintiff as a member of Keller Lenkner in this case. Mr.

6    Postman's representation here is thus far more egregious than in *All American Semiconductor*,

7    where the plaintiff's law firm was disqualified even though the law firm attempted to erect a

8    "broad ethical wall" to screen the tainted attorney from working on plaintiff's case.  *All American*

9    *Semiconductor*, 2008 WL 5484552 at *4.

10   **IV.    CONCLUSION**

11         For the foregoing reasons, this Court should order that Mr. Postman and Keller Lenkner

12   are disqualified from continuing to represent Plaintiff in this litigation.

13   Dated: October 24, 2018                    ___/s/ *Brian C. Rocca*_____

14                                              Brian C. Rocca
                                                MORGAN, LEWIS & BOCKIUS LLP

15                                              *Attorneys for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                     Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC