MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger, Bar No. 095987
kent.roger@morganlewis.com
Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIVA LIMOUSINE, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC; RASIER, LLC; RASIER-CA, LLC; UBER USA, LLC; and UATC, LLC,<br><br>Defendants. | Case No. 3:18-cv-05546-EMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY WARREN POSTMAN AND KELLER LENKNER LLC**<br><br>Date:      November 20, 2018<br>Time:      1:30 p.m.<br>Location:  Courtroom 5<br>Judge:     Hon. Edward M. Chen |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC

DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

III. APPLYING THE PROPER LEGAL STANDARD, MR. POSTMAN AND KELLER LENKNER MUST BE DISQUALIFIED ................................................... 7

    A. Keller Lenkner And Mr. Postman Cannot Dispute The Underlying Facts Mandating Disqualification ............................................................................. 7

        1. Mr. Postman Exchanged Privileged And Confidential Communications With Uber Through His Work On The Seattle Litigation ............................................................................................. 8

        2. Mr. Postman Does Not, And Cannot, Claim He Shared Uber Confidential Information Obtained In The Seattle Litigation With Third Parties ....................................................................................... 9

        3. Mr. Postman And Uber Exchanged Privileged And Confidential Communications Related To Amicus Briefs Supporting Uber In Alleged Misclassification Suits ............................................................. 10

    B. The Seattle Litigation Is Substantially Related To This Litigation ..................... 11

    C. The Chamber's Amicus Briefs Are Substantially Related To This Litigation ........................................................................................................... 12

    D. Uber Has Not Waived Its Right To Seek KL's Disqualification ........................ 12

    E. The Equities Favor Uber .................................................................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii  Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
  2008 WL 5484552 (N.D. Cal. 2008)....................................................................................2, 4, 6

*Allen v. Academic Games Leagues of Am., Inc.*,
  831 F. Supp. 785 (C.D. Cal. 1993) ...............................................................................................3

*In re Complex Asbestos Litig.*
  232 Cal. App. 3d 572 (1991)..................................................................................................13, 14

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999) .........................................................................................2, 3, 4, 14

*Farris v. Fireman's Fund Ins. Co.*,
  119 Cal. App. 4th 671 (2004)......................................................................................................1, 7

*Flatt v. Sup. Ct.*,
  9 Cal. 4th 275 (1994) ...................................................................................................................6, 15

*Global Van Lines, Inc. v. Sup. Ct.*,
  144 Cal. App. 3d 483 (1983).........................................................................................................6

*Javoriski v. Nationwide Mut. Ins. Co.*,
  2006 WL 3242112 (M.D. Pa. Nov. 6, 2006) ............................................................................14

*Koloff v. Metro. Life Ins. Co.*,
  2014 WL 2590209 (E.D. Cal. June 10, 2014)..........................................................................13

*Lynn v. George*,
  15 Cal. App. 5th 630, 639-41 (2017) .........................................................................................11

*McElroy v. Pac. Autism Ctr. For Educ.*,
  2015 WL 2251057 (N.D. Cal. May 13, 2015) .................................................................4, 6, 12

*Miller UK Ltd. v. Caterpillar, Inc.*,
  17 F. Supp. 3d 711, 732-33 (N.D. Ill. 2014) ............................................................................11

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
  69 Cal. App. 4th 223 (1999)..........................................................................................4, 5, 6, 9

*Nidec Corp. v. Victor Co.*,
  249 F.R.D. 575 (N.D. Cal 2007) ................................................................................................11

*Oliver v. SD-3C, LLC*,
  2011 WL 13156460 (N.D. Cal. Aug. 4, 2011)..........................................................................5, 6

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii                                                   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ontiveros v. Constable*,
  245 Cal. App. 4th 686 (2016) ............................................................................................... 13

*In re. Pac. Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ................................................................................................ 4

*River W., Inc. v. Nickel*,
  188 Cal. App. 3d 1297 (1987) ........................................................................................ 12, 13

*Rosenfeld Constr. Co. v. Sup. Ct.*,
  235 Cal. App. 3d 566 (1991) .................................................................................................. 6

*Schwartz v. Steven Kramer & Assoc.*,
  1992 U.S. Dist. LEXIS 12223 (E.D. Penn. August 17, 1992) ............................................. 14

*Tibbott v. N. Cambria Sch. Dist.*
  2017 WL 2570904 (W.D. Pa. June 13, 2017) ...................................................................... 14

*Tr. Corp. of Montana v. Piper Aircraft Corp.*,
  701 F.2d 85 (9th Cir. 1983) .................................................................................................. 13

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) .................................................................................................. 1

*William H. Raley Co. v. Sup. Ct.*,
  149 Cal. App. 3d 1042 (1983) ....................................................................................... 2, 3, 4

**Statutes**

9 U.S.C. § 3 .................................................................................................................................. 12

**Other Authorities**

Local Rule 3-12 ............................................................................................................................ 12

Rule 1-100 ................................................................................................................................. 3, 4

Rule 1.0(b) ..................................................................................................................................... 3

Rule 3-310 ............................................................................................................................. 3, 4, 5

Rule 5-102 ..................................................................................................................................... 4

Rule 5-102(B) ................................................................................................................................ 3

## I. INTRODUCTION

Having received confidential information from Uber for nearly three years on matters substantially related to driver classification issues, Warren Postman violates his ethical duties by representing Plaintiff in this action. Mr. Postman and Keller Lenkner LLC (collectively "KL"), however, may not avoid a straightforward application of the law by inventing legal standards and ignoring and mischaracterizing key facts.

KL asks the Court to invent new law and hold that California has "abrogated" rules regarding lawyers' duties to non-clients in a common interest agreement. But KL's own ethics advisors, and now Uber's rebuttal ethics expert, Professor Richard Zitrin of UC Hastings, all endorse the very same ethical standard at the heart of Uber's motion.[1] They agree the key question is whether Mr. Postman's former representation supporting Uber is "substantially related" to his current representation adverse to Uber. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980); *see also* Zitrin Decl., ¶ 7(b); Pera Decl., ¶ 14(b) and (c); Clark Decl., ¶ 13. Critically, Mr. Postman, while working at the Chamber, obtained confidential information from Uber on matters substantially related to the misclassification issue forming the basis of Diva's UCL claim. As such, "access to confidential information in the first matter … is *presumed* and disqualification is *mandatory*." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 683 (2004) (citing *Flatt v. Sup. Ct.*, 9 Cal. 4th 275, 283 (1994)) (emphasis added). The analysis can end there.

However, Uber more than meets its burden by demonstrating that the confidential information Mr. Postman received from Uber in the Seattle litigation is, in fact, material to his current representation of Diva. Mr. Postman's co-counsel at the Chamber, Steven Lehotsky, has unambiguously so declared:

> Because of the centrality of the independent contractor/employee classification issue to the Seattle litigation, Mr. Postman and I received confidential information from Uber's counsel about its core legal strategies and business model regarding those issues pursuant to the common-interest agreement that the parties had entered into.

---

[1] Although KL sought ethics advice in May 2018, that advice was based solely on Mr. Postman's self-serving representations about his prior work with Uber and rendered without reviewing the underlying confidential communications.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

Lehotsky Supp. Decl., ¶ 11.  Although the "substantial relationship" between the two representations imposes a *presumption* that Mr. Postman obtained material confidential information, *and* Mr. Lehotsky conclusively establishes by sworn declaration that Mr. Postman *actually* obtained such information, Uber is willing to submit for *in camera* review unredacted copies of written communications with Mr. Postman.[2]

KL's participation in this matter is tainted.  KL may not avoid disqualification by proposing a wholesale evisceration of the law protecting common interest agreements.  The motion to disqualify should be granted.

## II.    KELLER LENKNER MISSTATES THE LEGAL STANDARD

Although disqualification is disfavored, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999).  As Uber demonstrated in its opening papers (Mot. at 11), an attorney who has received confidential information from a non-client is precluded—along with his law firm—from representing a party adverse to the non-client in a substantially related matter.  *See, e.g., All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552 at *4 (N.D. Cal. 2008); *William H. Raley Co. v. Sup. Ct.*, 149 Cal. App. 3d 1042, 1047 (1983).  In such a situation, disqualification is mandatory to safeguard the integrity of the judicial process.  *SpeeDee*, 20 Cal. 4th at 1156.

KL's own experts endorse the "substantial relationship" test.  Mr. Pera expressly concedes that Mr. Postman may "have an obligation of confidentiality to Uber as a result of a common-interest agreement between the Chamber and Uber in the Seattle litigation," and that disqualification of Mr. Postman based on the common interest agreement is proper if Mr. Postman's representation adverse to Uber is "*substantially related to the Seattle litigation*."  Pera Decl., ¶ 14(b), (c) and (f) (emphasis added).  Similarly, Mr. Clark acknowledges that "some cases support[] disqualifying an attorney who has received material confidential information from a non-client through a common interest or joint plaintiffs' agreement…."  Clark Decl., ¶ 13

---

[2] Uber requests that any *in camera* review be conducted by a magistrate judge and that the submission of unredacted documents not be considered a waiver of any privileges or protections.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

(emphasis added). Mr. Postman concedes this is consistent with the advice he was given:

> Mr. Clark further advised me that, to the extent information shared in connection with the Seattle litigation was subject to a common-interest agreement, that would create a potential issue only if Keller Lenkner took on a matter for which that information was material.

Postman Decl., ¶ 36 at 9; *see also id*. ¶ 38 at 10 (Mr. Pera "reached the same basic conclusion"). Yet, unable to satisfy this controlling standard, KL simply invents a new, incorrect standard.

### A. *Raley* Remains Good Law

KL argues that Uber relies on "abrogated precedent"—*Raley*—asserting that differences in the text of Cal. Rule of Professional Conduct ("CRPC") 3-310(E) and its predecessor, Rule 5-102(B), demonstrate that post-rule change, a disqualifying conflict can *only* arise between an attorney and a "client or former client." Opp. at 12-13, 16-17.[3] But no court has held that such a loophole, which would allow a lawyer in Mr. Postman's circumstances to evade disqualification, exists.[4] KL appeals to "[f]idelity to text", but under California Supreme Court precedent, courts must "ensure that literalism does not deny the parties substantial justice" when deciding motions to disqualify. Opp. at 12; *SpeeDee*, 20 Cal. 4th at 1144. Rather, a court's authority to "disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *Id*. at 1145.

While feigning allegiance to the "text" of the rules, KL ignores the very first one, CRPC 1-100: "[t]he prohibition of certain conduct in these rules *is not exclusive*. Members are also bound by *applicable law… and opinions of California courts*." *Id*. (emphasis added); *see also Allen v. Academic Games Leagues of Am., Inc.*, 831 F. Supp. 785, 789 (C.D. Cal. 1993) (relying on Rule 1-100 to reject contention that *Raley* was abrogated and noting it "would undermine the integrity of the legal profession if [an attorney] is able to utilize a loophole in Rule 3-310 to avoid

---

[3] An updated version of the Cal. Rules of Professional Conduct went into effect on November 1, 2018. Consistent with the prior version, the current rules state that they are not "exclusive" and lawyers remain "bound by…opinions of California courts." *See* Rule 1.0(b), *available at* http://www.calbar.ca.gov/Portals/0/documents/rules/Rules-of-Professional-Conduct.pdf.

[4] The leading treatise on Professional Responsibility in California also continues to cite *Raley* through its September 2017 update. Mark L. Tuft and Ellen R. Peck, Cal. Prac. Guide Prof. Resp. (Sept. 2017 ed.) (citing *Raley* seven times).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3    Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

disqualification" in a non-client conflict case). Accordingly, numerous courts have followed *Raley* since the rule change, including in many of the cases KL cites. *See, e.g., Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,* 69 Cal. App. 4th 223, 232 (1999) ("[a]lthough the provisions of former rule 5-102 have been amended and replaced by current rule 3-310, *Raley*'s reasoning remains good law"); *All American Semiconductor*, 2008 WL 5484552 at *4-5.

For support, KL relies extensively on language in *McElroy v. Pac. Autism Ctr. For Educ.*, 2015 WL 2251057 (N.D. Cal. May 13, 2015). KL neglects to disclose that the court's discussion of whether *Raley* was abrogated is pure *dicta*: "The Court need not, and does not, resolve this issue today." *Id.* at *5 (holding that even if *Raley* were good law, there was no conflict of interest).[5] KL's reliance on *Oaks Management Corp. v. Superior Court* is also misplaced as that court, in fact, acknowledged that "courts have cited *Raley* [even] after the abrogation of former rule 5-102" despite the absence of an attorney-client relationship. 145 Cal. App. 4th 453, 465-66 (2006). *Oaks Management* only distinguished *Raley* on its facts. *Id*.

Moreover, KL's artificially narrow reading of the CRPC—namely, that "subsequent representations can generate forbidden conflicts *only* with respect to current and former clients" (Opp. at 13; emphasis added)—would obliterate the widely-recognized common interest privilege. *See, e.g.*, *In re. Pac. Pictures Corp.,* 679 F.3d 1121, 1129 (9th Cir. 2012) ("the 'common interest' … rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other").[6] Allowing an attorney to easily violate a common interest agreement would *vitiate*, not protect, "the integrity of the legal system," and would not promote "confidence in the legal profession." CRPC 1-100.

### B. There Is No Heightened "Substantial Relationship" Test In Non-Client Cases

Once a moving party establishes that, as here, an attorney represented a party to a common interest agreement and has a duty to a non-client to preserve confidential information

---

[5] *McElroy* did not mention Rule 1-100 or the California Supreme Court's statements in *SpeeDee*.

[6] Adopting KL's formulation would allow a law firm that entered into a common interest agreement to use confidential information obtained from a non-client party to the agreement in subsequent litigation against the non-client because no rule would address a lawyer's duty to a non-client. That cannot be, and is not, the law.

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

4  Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

received in the course of the agreement, the court must next determine whether the former and current representations are "substantially related." The test for determining a "substantial relationship" is not disputed: it "entails an inquiry into the *similarities* between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." *Morrison Knudsen*, 69 Cal. App. 4th at 234 (emphasis added); *see also* Opp. at 13 (quoting *McElroy*, 2015 WL 2251057 at *5 (citing *Morrison Knudsen*, 69 Cal. App. 4th at 233-34) ("'substantial relationship' test similar to the one typically used in conducting an analysis under Rule 3-310 for successive attorney-client relationships")).

Well aware it would fail the "typical" substantial relationship test, KL concocts a new, non-existent standard: "where there was never an attorney-client relationship, *more is required* than in the former-client context to show matters are substantially related." Opp. at 13 (emphasis added). Although KL's ethics advisors expressly endorse the substantial relationship test (*e.g.*, Pera Decl., ¶ 14(f)), KL nonetheless alludes, without specifics or identifying governing law, to a purported heightened standard for disqualification in non-client situations. *E.g.*, Clark Decl., ¶ 13. But, as set forth below, no case holds that, *under California law*, an elevated standard applies to non-client cases. *See also* Zitrin Decl., ¶¶ 7(b), 9(b).

1. "Substantial Relationship" Does Not Mean "Essentially Identical"

KL erroneously equates "substantial relationship" with a test requiring "essentially identical facts" or "same-facts." Opp. at 15. However, "[c]ourts have counseled against construing the 'substantial relationship' test too narrowly." *Oliver v. SD-3C, LLC*, 2011 WL 13156460, at *3 (N.D. Cal. Aug. 4, 2011); *see also* Mot. at 13 n.14. Rather, the test compares the relationship between the attorney's *representations* in the former and current matters, an inquiry that requires more than a simplistic comparison of whether the facts are the same. Zitrin Decl., ¶ 8(b) ("the substantial relationship test involves an inquiry into the attorney's former and current representations to assess the similarity between the two."). Thus, it also includes an attorney's interactions "with in-house counsel" and others at the company to determine whether the former representation "would have revealed confidential information which would be relevant and material to the 'evaluation, prosecution, settlement or accomplishment of the current

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

representation.'" *Oliver*, 2011 WL 13156460 at *4, (quoting *Jessen*, 111 Cal. App. 4th at 713); *Rosenfeld Constr. Co. v. Sup. Ct.*, 235 Cal. App. 3d 566, 576 (1991) ("time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy" should be reviewed among other factors).  No case cited by KL (Opp. at 15-16) holds that the standard for "substantial relationship" is "essentially identical" or "the same" facts.[7]

> 2. There Is No Need To Prove "Broad Disclosure" Of Confidential Information Because Access To Such Information Is *Presumed* When The Prior And Current Representations Are Substantially Related

KL also misstates the correct legal standard by arguing Uber must prove "that it made a broad disclosure of privileged information to Mr. Postman".  Opp. at 19; *see also id*. at 1, 3 (falsely claiming that Uber must show Mr. Postman had access to "*heaps*" or "*troves* of confidential information" in order to be disqualified) (emphasis added).  Rather, "[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation … is *presumed*."  *Flatt*, 9 Cal. 4th at 283 (emphasis added); Zitrin Decl. ¶ 10(b) ("whether a lawyer <u>*actually possesses*</u> confidential information… is not the determining issue.  Rather, it is whether a substantial relationship exists between the subjects of the two compared representations, in that access to confidential information in the first matter is presumed.").  When discussing the legal standard, KL ignores the cases that adopt the "conclusive presumption" when the moving party has established that the previous and prior representations are "substantially related."  *See All American Semiconductor*, 2008 WL 5484552 at *5; *Global Van Lines, Inc. v. Sup. Ct.*, 144 Cal. App. 3d 483, 489 (1983).  Elsewhere in their brief, however, KL concedes that a "lawyer can be *presumed* to have learned confidential things" if representations are substantially

---

[7] *Oaks* and *McElroy* follow the *Morrison Knudsen* standard.  Although both cases found no disqualification, they are distinguishable.  *See* p.12, below.  KL claims it is "not aware of any case that disqualifies a lawyer" in a non-client situation "where the two matters did not involve the same facts." Opp. at 16.  But *Morrison Knudsen* is one such case and KL's attempts to distinguish it because the non-client relationship was "ongoing" (Opp. at 16 n.3) are unavailing.  That only "exacerbated" an existing conflict. *Morrison Knudsen*, 69 Cal. App. 4th at 232; *id*. at 235 ("the facts of cases are never entirely alike, and no cases would ever be 'substantially related' if they could be distinguished on such narrow grounds").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1  related.  Opp. at 22 (emphasis in original)

2  The only case KL cites for its "broad disclosure" standard, *Acacia Patent Acquisition,
3  LLC v. Sup. Ct.*, involved "unique circumstances" not present here.  234 Cal. App. 4th 1091,
4  1097, 1102 (2015).  In *Acacia*, the moving non-client sought to disqualify a law firm that gained
5  access to the non-client's confidential information, not directly, but through the law firm's
6  representation of the non-client's former attorneys in a fee dispute.  *Id*. at 1094-95.  The court
7  required the moving party to show a "broad disclosure of the non-client's privileged information
8  (i.e., something beyond the attorney-client retainer agreement and the number of hours worked)."
9  *Id.* at 1104.  Such a requirement does not make sense when a lawyer receives confidential
10 information directly from the non-client, as would occur under a common interest agreement.[8]

11 Whether an attorney "actually possesses confidential information that would work to his
12 advantage in his current representation is not the test.  Rather, the test is whether a substantial
13 relationship exists between the subjects of the two compared representations."  *Farris*, 119 Cal.
14 App. 4th at 683.  As *Acacia* emphasized, once a moving party has demonstrated a substantial
15 relationship, "it is unnecessary for a party seeking disqualification to pinpoint precise privileged
16 documents as the basis for a potential unfair advantage … the better rule here is to *presume* the
17 possession of material confidential information and disqualify counsel in a substantially related
18 action" because "'it is not within the power of the [party seeking disqualification] to prove what
19 is in the mind of the attorney.'"  *Acacia,* 234 Cal. App. 4th at 1106.  Thus, the "conclusive
20 presumption" is necessary to "avoid the ironic result of disclosing the former client's confidences
21 and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear
22 the legal profession's intent to preserve the public's trust over its own self-interest."  *Id.*

23 **III.   APPLYING THE PROPER LEGAL STANDARD, MR. POSTMAN AND KELLER LENKNER MUST BE DISQUALIFIED**

24

25 **A.   Keller Lenkner And Mr. Postman Cannot Dispute The Underlying Facts Mandating Disqualification**

26 Unable to contradict the underlying facts that mandate disqualification, KL ignores key

---

[8] Regardless, there is abundant evidence Mr. Postman obtained *material* confidential and privileged information from Uber, which is sufficient to support disqualification.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

facts and resorts to misdirection and mischaracterizations. KL's claim that Uber has not produced *actual evidence* that confidential information (including attorney work product) was shared with Mr. Postman (Opp. at 2) requires a deliberate ignorance of the declarations filed in support of Uber's motion. *See, e.g.*, Lehotsky Decl., ¶¶ 14, 19; Bramer Decl., ¶11 and Ex. 2; Allen Decl., ¶¶ 11, 12, 23 and Exs. 3 and 14. Regardless, KL notably does not dispute the following facts:

- Uber and the Chamber had an express common interest agreement, confirmed in writing, with respect to the Seattle litigation. Allen Decl., ¶¶ 15-18; *see* Lehotsky Decl., ¶¶ 13-14.

- Uber shared its confidential information (including attorney work product) under that common interest agreement, and many of these communications were marked by the parties to the agreement as confidential, common interest, privileged, and/or attorney work product. Allen Decl. ¶¶ 8, 14, 18, 19, 22, 23; Lehotsky Decl., ¶¶ 13, 14, 16, 22.

- Uber's counsel and Mr. Postman shared drafts of, and legal strategy regarding, amicus briefs and communications regarding these drafts were marked "privileged." Evangelis Decl., ¶¶ 5-8.

Lacking a response to these foundational facts, KL weaves a tale filled with generalities but short on details. In KL's telling, Uber and the Chamber did not exchange confidential information (despite working closely in litigation), and even if they did, the information was widely known or shared with other parties (despite the expectation of the parties and the privilege markers on the communications). But this version, and the expert reports submitted in support of KL's opposition, wholly rely on Mr. Postman's self-interested and demonstrably incomplete and evasive story told in his declaration (and to KL's ethics advisors). Mr. Postman's statements and denials are belied by the actual documents and declarations submitted with Uber's moving papers. Moreover, Mr. Postman's colleague (Mr. Lehotsky)—who, unlike Mr. Postman, remains at the Chamber with access to the underlying documents—refutes the story Mr. Postman told KL's ethics advisors and that he is now telling this Court. Although KL criticizes Uber for not sharing the specifics of the confidential material shared with Mr. Postman (Opp. at 22), Uber is not required to destroy the privilege in order to save it. *See Acacia*, 234 Cal. App. 4th at 1106.

        1.    Mr. Postman Exchanged Privileged And Confidential Communications With Uber Through His Work On The Seattle Litigation

Uber shared its privileged information with Mr. Postman over a nearly three-year period.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1  Responding head on to Mr. Postman, Mr. Lehotsky unequivocally states: "I received confidential information from Uber… and know that Mr. Postman received confidential information from Uber… that *provided insight into the company's core legal strategy on independent-contractor classification issues and its business model, and that it would be unfair for a litigation opponent to have it*." Lehotsky Supp. Decl., ¶ 18 (emphasis added); *see also id*. ¶ 11 (Uber shared with Mr. Postman its confidential information about "its core legal strategies and business model regarding [independent contractor/employee classification issues] pursuant to the common-interest agreement that the parties had entered into").  Mr. Postman's conclusory characterization that these communications "were neither particularly sensitive nor remotely privileged" is directly contradicted by the parties' common interest agreement, the privilege markers on the communications, clear statements by Uber's in-house and outside counsel and the Chamber, and, most importantly, the content of the communications themselves.

Uber has met or exceeded its burden of showing Mr. Postman had access to confidential information to support disqualification, even though it is a non-client, by showing that the information is directly material to the misclassification issue that forms the basis of Plaintiff's UCL claim.  Unlike the "handful of an adversary's financial statements" KL compares it to, Opp. at 15 (citing *Oaks*, 145 Cal. App. 4th at 472), the disclosure here, consisting of confidential information on a key issue, is broad enough under any measure to support disqualification. *See, e.g. Morrison Knudsen*, 69 Cal. App. 4th at 234-35.

    2.  Mr. Postman Does Not, And Cannot, Claim He Shared Uber Confidential Information Obtained In The Seattle Litigation With Third Parties

Littered throughout Mr. Postman's declaration are cryptic statements that information relating to the Seattle litigation was shared with other Chamber members or potential Chamber donors.  Postman Decl., ¶ 38; *see also id.,* at ¶¶ 37, 39.  Yet Mr. Postman's statements lack evidentiary foundation as he omits who purportedly shared this information.  These broad, generic, self-serving statements are also unsupported by the evidence.  According to Mr. Lehotsky, any suggestion "that the Litigation Center shared its core legal strategy or waived its attorney-work product protections or attorney-client privilege, or that of Uber, in regard to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9   Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

Seattle litigation is *false*." Lehotsky Supp. Decl., ¶ 13 (emphasis added).

Even accepting at face value Mr. Postman's self-serving statements that he shared "extensive information about the case," he notably stops short of saying he shared *Uber's* confidential information. And for good reason. Doing so would be a direct violation of the Chamber's policy to "treat communications with members about litigation and other legal issues as confidential, including those the Chamber has had with Uber" and the Chamber's common interest agreement with Uber. Lehotsky Decl., ¶¶ 6, 23, 28; *see also* Lehotsky Supp. Decl., ¶ 13 (any such communications "certainly did not reveal any of Uber's confidential information that its counsel had provided to the Chamber in connection with our common-interest agreement").

Mr. Lehotsky and Mr. Allen also directly contradict Mr. Postman's assertion that "Uber and the Litigation Center staff were comfortable sharing information about the case" to the extent he is implying that this includes Uber's confidential information. Postman Decl, ¶ 39; *see* Lehotsky Supp. Decl., ¶ 14 ("to the extent it suggests that the Chamber shared any of Uber's confidential information with another party, that suggestion is also false… the Chamber never shared Uber's confidential information with any other Chamber member"); Allen Supp. Decl., ¶ 7 ("Uber would not have worked with the Chamber on the Seattle litigation if the Chamber intended to share Uber's confidential information protected by the common interest agreement.").

### 3. Mr. Postman And Uber Exchanged Privileged And Confidential Communications Related To Amicus Briefs Supporting Uber In Alleged Misclassification Suits

Mr. Postman concedes that the Chamber exchanged drafts of amicus briefs with Uber and its outside counsel, but claims that the practice of exchanging briefs "*presumably* reflects counsel's understanding" that this "places the draft outside the attorney-client privilege." Postman Decl. ¶ 18. But Mr. Postman's presumption cannot override the stated intentions and expectations of the parties—as evidenced by privilege markers and confirmed by declarations—that the drafts were privileged. *See* Evangelis Decl., ¶¶ 5-8. Courts have upheld the privilege with respect to sharing amicus briefs. *See* Mot. at § III.B.3 (citing cases). KL does not respond to these authorities, nor does it cite to any case holding that a litigant and amici cannot have a common interest. Instead, it cites to irrelevant cases that found no common legal interest arises

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

out of a business interest. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 579 (N.D. Cal 2007) (finding no common legal interest arising out of a business relationship); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732-33 (N.D. Ill. 2014) (litigation funder that has a *business* interest in litigation does not have a common *legal* interest); *Lynn v. George*, 15 Cal. App. 5th 630, 639-41 (2017) (business communications not confidential). *Nidec* also states the common interest privilege is "applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance." 249 F.R.D. at 578. That standard *supports* Uber's position as that is exactly what Uber and the Chamber did with respect to amicus briefs.

### B. The Seattle Litigation Is Substantially Related To This Litigation

The factors for finding a substantial relationship—similarities in facts and legal questions posed, and the nature and extent of the attorney's involvement—weigh heavily in favor of finding a substantial relationship. There are obvious and significant factual and legal similarities between Mr. Postman's representation of the Chamber (and his concomitant interactions with Uber) during the Seattle litigation and his current representation of Diva: "[T]he question of *whether* Uber drivers were independent contractors or employees was *at the center* of numerous arguments in the Seattle litigation and formed the basis for the Chamber's arguments that the City of Seattle's ordinance was improper." Lehotstky Supp. Decl., ¶ 8 (emphasis added); *see also id.* ¶ 11; Allen Supp. Decl., ¶ 4(b) ("Uber's legal analysis and strategy regarding its independent contractor business model was necessarily and obviously implicated in the Seattle litigation, thus requiring the "regular" communications that Mr. Postman concedes, many of which included confidential Uber information and attorney work product."); *id*. ¶¶ 3, 8(b).

Mr. Postman's involvement with Uber was extensive. Mr. Postman evasively claims that the time he "spent interacting with Uber attorneys" was only a "small fraction" of his time at the Chamber. Postman Decl., ¶ 42. Mr. Lehotsky, however, notes "that there is no single matter on which Mr. Postman spent more time over the relevant two and a half years than the Seattle litigation;" "there is no set of in-house lawyers at a Chamber member that he spent more time with;" and "there are no other Chamber members with which Mr. Postman had more privileged communications than counsel for Uber." Lehotsky Supp. Decl. ¶ 17.

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

11                Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1   In stark contrast, the relationship between matters was more tenuous in two of KL's
2   authorities, *McElroy* and *Oaks*.  In *McElroy*, the factual situation between the "prior and present
3   relationships … [bore] no relation to one another" and were "separated in both time and in
4   substance," while there could be no similarities in legal questions posed because the attorney in
5   question "was not involved in any litigation, let alone comparable litigation" in his previous non-
6   legal relationship with defendants.  2015 WL 2251057 at *5-6.  In *Oaks*, there was no overlap in
7   legal or factual issues in the two matters.  Rather, the law firm in question allegedly had
8   "knowledge of [defendant's] personal finances" that may be useful in "settlement negotiations"
9   because two attorneys at the law firm had made investments with the defendant (unrelated to the
10  litigation at issue).  145 Cal. App. 4th at 458-60.

### C. The Chamber's Amicus Briefs Are Substantially Related To This Litigation

KL does not attempt to claim the cases where the Chamber filed amicus briefs supporting Uber—*O'Connor* (which Diva asserted is "related" to this matter under Civil Local Rule 3-12) and *Mohamed*—are not substantially related to this case.  Instead, they resort to misdirection, claiming Mr. Postman's prior work does not matter because he "is not representing a party challenging one of Uber's arbitration clauses."  Opp. at 23.  That is not the test.  The test is whether factual and legal similarities exist between the two cases, and the extent of Mr. Postman's involvement, which Uber has established was significant.  Moreover, contrary to KL's suggestion that the arbitration issues are irrelevant to Diva's UCL claim, this Court will likely have to consider whether the pendency of driver arbitrations on the misclassification issue: (a) requires a mandatory stay of this action under 9 U.S.C. § 3 or, alternatively, a discretionary stay; and/or (b) requires the dismissal of this action under Fed. R. Civ. Pr. 12(b)(7) and 19(b).

### D. Uber Has Not Waived Its Right To Seek KL's Disqualification

To successfully oppose Uber's disqualification motion, KL must state a *prima facie* case that Uber waived its right to seek disqualification.  *See River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987).  KL has utterly failed to meet its burden, and its own authorities explain why: waiver is a "narrow exception" and, to establish it, the party asserting waiver must show that the moving party engaged in a "delay … [that was] extreme in terms of time and consequence."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                                  Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1   *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309-12 (1987) (finding waiver because "almost 30 months passed while a trial judge was presumably available to hear the [disqualification] motion"); *Tr. Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (waiver because of three-year delay and motion filed on eve of trial).

Here, no such delay occurred. Uber filed its disqualification motion only six weeks after Diva filed its Complaint, before a single case management conference in the case, and even before the deadline for a responsive pleading. Uber's prompt action is precisely the opposite of the "extreme" delay required to establish waiver, and it has had no adverse consequences on this action. *See, e.g.*, *Ontiveros v. Constable,* 245 Cal. App. 4th 686, 701-702 (2016) (16-month delay not extreme where demurrer was still pending, discovery was still in progress, and no trial date was set); *In re Complex Asbestos Litig.* 232 Cal. App. 3d 572, 600 (1991) (no waiver for motion made five months after knowledge of conflict and on eve of trial). Because KL cannot show that Uber engaged in "extreme delay" in seeking disqualification or that the delay had an "extreme consequence," KL has failed to establish a *prima facie* case of waiver.

Nor does KL's attempt to create a sideshow rescue its argument. Seeking to create a new rule of law, KL claims that Uber waived the conflict in *Diva* because it did not move to disqualify Keller Lenkner *in a completely different* case currently on appeal in the Third Circuit—*Razak et al. v. Uber Technologies, Inc*. In that case, Keller Lenkner first made its appearance on appeal, just over three months ago. Notably, Mr. Postman has never even appeared as counsel in the case. Yet despite these facts, KL argues that Uber has forever waived disqualification in all cases because it did not move to disqualify KL in the *Razak* appeal because that was the first instance in which Keller Lenkner was adverse to Uber. But *Razak* is a different case, brought by a different plaintiff, in a different jurisdiction, where KL is subject to different rules of professional conduct. Not surprisingly, KL cannot cite a single case to support its argument that a failure to assert a conflict of interest in one case waives the issue in a completely different case. Instead, KL cites only cases where the conflicted law firm had represented the *same plaintiff* against the defendant in earlier proceedings *alleging the same claims*. See *Koloff v. Metro. Life Ins. Co.*, 2014 WL 2590209, *5 (E.D. Cal. June 10, 2014) (delay of "more than three years" on cases pursuing "*the*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                           Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1  *same application for benefits*") (emphasis in original); *Tibbott v. N. Cambria Sch. Dist.* 2017 WL
2  2570904, *4 (W.D. Pa. June 13, 2017) (delay of "16 months after the issue of the potential
3  conflict was first raised" during school board hearings that preceded litigation); *Javoriski v.*
4  *Nationwide Mut. Ins. Co.*, 2006 WL 3242112, at *6, 8 (M.D. Pa. Nov. 6, 2006) (delay of over a
5  year from when the conflicted lawyer first submitted to insurance company the "underl[y]ing
6  claim" that preceded litigation).[9] KL's failure to cite a single relevant case is telling, but not
7  surprising:  to Uber's knowledge, not a single case holds that a litigant waives disqualification in
8  one case because it did not move to disqualify a conflicted lawyer in a case brought by a *different*
9  plaintiff in a *different* jurisdiction.[10]  This Court should decline KL's invitation to build a new rule
10 of law on such a flawed foundation.

11     **E.**    **The Equities Favor Uber**

12     KL closes its Opposition by claiming disqualification would lead to an inequitable result.
13 But its arguments are revealing in that they do not point to any prejudice or inequity that would
14 befall *its client Diva* if KL is disqualified.

15     Instead, KL relies upon the fact that it sought ethical guidance.  But that guidance is only
16 as good as the facts provided when seeking such opinions, and Mr. Postman omitted key facts
17 when speaking to KL's ethical experts.  Nor does it matter that *KL* "reasonably relied on that
18 advice."  Opp. at 24.  The Court must view prejudice to the *parties* in resolving the motion to
19 disqualify, as well as the integrity of the legal system as a whole.  *SpeeDee*, 20 Cal. 4th at 1145;
20 *see also Asbestos,* 232 Cal. App. 3d at 599 (clients' loss of services of knowledgeable counsel of
21 their choice "is not the type of prejudice" contemplated by courts in weighing equities).  Diva will
22 not be prejudiced if KL is disqualified.  Uber moved for disqualification within six weeks after

---

[9] In *Javoriski*, the court also noted in *dicta* the lawyer was adverse to the defendant *in over twenty matters over a number of years* before the defendant moved to disqualify. 2006 WL 3242112, at *4, *8 (M.D. Pa. Nov. 6, 2006).  That is a far cry from the situation here.

[10] KL's view creates perverse incentives:  it would force litigants to preemptively file multiple disqualification motions in various jurisdictions, regardless of the merits, simply to prevent alleged waiver.  Such a rule would lead to the very tactical abuse KL decries.  Notably, obtaining vicarious disqualification in *Razak* under the Pennsylvania Rules of Professional Conduct (which would govern) would require a different analysis because Mr. Postman has not appeared as counsel there.  *See Schwartz v. Steven Kramer & Assoc.*, 1992 U.S. Dist. LEXIS 12223, *5-6 (E.D. Penn. August 17, 1992).  Uber should not be penalized for proceeding judiciously.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14     Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC

1   the lawsuit was filed, and before the initial case management conference had been held.  Uber

2   agreed to expedited briefing and hearing of the motion to ensure no substantive work need be

3   done on the case before the motion is decided.

4         In contrast, Uber *is prejudiced* by KL's continued involvement in this case.  Mr. Postman

5   obtained material confidential information from his prior representation while at the Chamber, as

6   detailed above.  It is irrelevant that Mr. Postman claims he cannot think of any confidential

7   information that may give Diva an advantage.  Postman Decl., ¶ 39.  Uber is not required to

8   "prove what is in the mind of the attorney."  *Acacia,* 234 Cal. App. 4th at 1106.  Nor is it relevant,

9   as the many declarations KL submits in support of its Opposition claim, that Mr. Postman has not

10  revealed any confidential information.  Vicarious disqualification is mandatory, *Flatt*, 9 Cal. 4th

11  at 283, which KL does not dispute.

12        Regardless, the Court should treat with skepticism any claim by Mr. Postman that he is

13  acting ethically.  Mr. Postman reveals that as early as May 2018, he was planning to join Keller

14  Lenkner and, because they were plotting to sue Uber on misclassification issues, they consulted

15  with ethics counsel because of the obvious conflicts.  That was the *very same month* he advised

16  and sought feedback from Uber (and other members of the Chamber's Labor & Employment

17  Advisory Committee) on *Dynamex*.  In other words, he was soliciting Uber and others for their

18  legal impressions on a key misclassification case *at the same time* he was asking for sign off from

19  ethics counsel to join Keller Lenkner and sue Uber in a case alleging misclassification.

20        Finally, KL cannot seriously claim—after relying on *dicta* (but not telling the Court),

21  inventing non-existent legal standards, ignoring or omitting key facts, and making unsupported or

22  evasive assertions about sharing confidential information with third parties—that Uber is not

23  being candid or is "shading" the issues.  The law and facts speak for themselves here.  KL cannot

24  avoid the consequences of Mr. Postman's unethical behavior.  Mr. Postman and Keller Lenkner

25  should be disqualified.

26  Dated: November 6, 2018                                     /s/ *Brian C. Rocca*
                                                                                   Brian C. Rocca

27                                                                                     MORGAN, LEWIS & BOCKIUS LLP

28                                                                                   *Attorneys for Defendants*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                 Case No. 3:18-cv-05546-EMC
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
WARREN POSTMAN AND KELLER LENKNER LLC