Ashley Keller (*pro hac vice*)
 ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
 tdl@kellerlenkner.com
Tom Kayes (*pro hac vice*)
 tk@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Tel: (312) 741-5220

Warren Postman (*pro hac vice*)
 wdp@kellerlenkner.com
**KELLER LENKNER LLC**
1300 I Street, N.W. Suite 400E
Washington, D.C. 20005
Tel: (202) 749-8334

Counsel for Plaintiff and the Putative Classes

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DIVA LIMOUSINE, LTD., individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. et al.,<br><br>*Defendants*. | No. 3:18-cv-05546-EMC<br><br>**PLAINTIFF'S ADMINISTRATIVE MOTION TO ALERT THE COURT TO NEW EVIDENCE**<br><br>Location: Courtroom 5<br>Judge: Hon. Edward M. Chen |

Plaintiff submits this administrative motion under Local Rule 7-11 to alert the Court to new evidence that is material to Uber's motion to disqualify Keller Lenkner. During the Seattle litigation, one of the non-parties with which the Chamber of Commerce coordinated was Uber's fiercest competitor, Lyft, Inc. Lyft was not a party to the Seattle litigation, but it paid the Chamber's legal costs and was informed of virtually all the details of the case, obtaining weekly updates about case strategy, draft pleadings, and how claims would be argued.

In its motion to disqualify Keller Lenkner, Uber did not disclose that Lyft was involved in

the Seattle litigation, how involved it was, or that Uber was aware of Lyft's involvement. In opposition to Uber's motion, Mr. Postman did not disclose this important information because he did not believe that he could. It was information that his former client, the Chamber, viewed as confidential. But the Chamber has now disclosed the information in a public filing in support of Lyft's lawsuit against Keller Lenkner and Mr. Postman alleging civil conspiracy and other tort claims based on the law firm's representation of Lyft drivers in arbitration. Ex. A,[1] Decl. of S. Lehotsky, *Lyft v. Postman et al.*, Dkt. 4-2, No. 18-cv-6978-YGR (N.D. Cal.); *see also* Ex. B, Decl. of L. Mahanta, *Lyft v. Postman et al.*, Dkt. 4-3, No. 18-cv-6978-YGR (N.D. Cal.); Ex. C, Decl. of L. Munoz, *Lyft v. Postman et al.*, Dkt. 4-4, No. 18-cv-6978-YGR (N.D. Cal.).

This new information is material to Uber's motion to disqualify for two reasons:

<u>First</u>, the new evidence further undermines Uber's claim of a confidential, common-interest arrangement with the Chamber. Lyft was not a party to the Seattle litigation and had no intention of joining it. And the Seattle litigation was not a case where a non-party still had a legal right at stake in the outcome, such as where a non-party holds a license to a patent that will be valid or invalid depending upon the success of a patent owner's case. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). Rather, Lyft had a business interest in the case: if the Seattle lawsuit failed, Lyft's costs of doing business might have increased. Sharing extensive information with a non-party that lacks a legal interest in the case precludes a finding of a common-interest agreement. *Id.* at 579 (distinguishing patent example from mere business interest); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014) (holding that a "rooting interest" in the outcome "is not a common *legal* interest" (emphasis in original)). That the Chamber now admits it routinely communicated to Lyft about "legal claims and defenses, timing and tactics of motion practice, legal strategy, and other strategic decisions" in the Seattle litigation vitiates Uber's claim that the very same information was kept confidential between Uber and the Chamber and thus could form the basis for disqualification here. Ex. A, Lehotsky Dec. ¶ 16.

<u>Second</u>, the new evidence informs the substantial-relationship analysis under California

---

[1] The exhibits referred to here are to the concurrently filed Declaration of Ashley Keller.

law. Lyft is Uber's fiercest competitor. Even if Uber could meet its burden to establish a common-interest agreement with the Chamber through conduct, the substantial-relationship test asks—among other things—whether "the nature of the prior representation was such that confidential information *material*" to this case "'would *normally* have been imparted'" to Mr. Postman in the Seattle case. *Hoffmann-La Roche Inc. v. Promega Corp.*, No. 93-cv-1748, 1994 WL 761241, at *16 (N.D. Cal. June 13, 1994) (quoting *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445, 14154 (1991)) (emphasis added). To be found "material," the confidential information supposedly shared must "be directly at issue in, or have some *critical importance* to, the second representation.'" *Skyy Spirits, LLC v. Rubyy, LLC*, No. 09-cv-00646, 2009 WL 3762418, at *2 (N.D. Cal. Nov. 9, 2009) (quoting *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (2004)) (emphases added).

Uber knew that Lyft was paying for the Seattle case. And Uber knew that, in exchange, the Chamber was providing Lyft with full access to case strategy, draft pleadings, and how claims would be framed and argued. Ex. A, Lehotsky Dec. ¶¶ 12, 16, 24, 28, 38, 40; Ex. B, Mahanta Dec. ¶¶ 5, 20, 27; Ex. C, Munoz Dec. ¶¶ 9, 14. It strains credulity to suggest that Uber "normally" would have shared with Mr. Postman highly sensitive, non-public facts about its business that also are of "critical importance" to this case, with full knowledge that doing so meant risking that Lyft would gain access to that information.

The sort of information that would be of "critical importance" to this case would include non-public facts about whether and how Uber's app allows it to exercise control over its drivers, how Uber decides to set fares, how Uber decides to pay drivers, or plans Uber might have to expand into other sectors of the transportation industry. But when asked by the Court at argument to identify even a general category of non-public facts that Uber conceivably could have shared with Mr. Postman, counsel for Uber failed to come up with a single one. He asserted instead that, because lawyering is a "team sport," counsel for Uber and the Chamber shared work product and discussed how to frame legal arguments. The new evidence of Lyft's involvement in the case confirms counsel's implicit concession: non-public facts critical to this case were not shared. Uber would *never*—let alone "normally"—have shared such information when it knew that the Chamber was

1  regularly communicating with Lyft about the case; that the Chamber was represented by Lyft's
2  longtime counsel, Jones Day; and that Lyft was paying the Chamber's legal bills.

3  With Lyft's extensive access to information in the Seattle litigation now revealed, the most
4  the Court can assume Uber "normally" would have shared with the Chamber consists of general
5  discussions about how to frame legal arguments. Under California law, such discussions are not
6  the sort of critical information that can give rise to disqualification. Indeed, cases consistently deny
7  disqualification even where an attorney ***directly and repeatedly represented*** the movant in
8  defending against a cause of action and later ***brought the same cause of action*** against the movant.
9  *See, e.g.*, *Fabric Selection, Inc. v. Wal-Mart Stores, Inc.*, 2009 WL 3876281, at *3–4 (C.D. Cal.
10 Nov. 17, 2009) (denying disqualification where an attorney defended Wal-Mart against claims that
11 its fabric designs violated copyrights and then brought claims against Wal-Mart alleging that its
12 fabric designs violated copyrights); *Khani v. Ford Motor Co.*, 215 Cal. App. 4th 916, 921 (2013)
13 (denying disqualification where an attorney defended Ford in 150 cases, including Lemon Law
14 cases, and then brought a Lemon Law case against Ford); *Banning Ranch Conservancy v. Superior*
15 *Court*, 193 Cal. App. 4th 903, 909 (2011) (denying disqualification where an attorney helped a city
16 develop guidelines for compliance with the California Environmental Quality Act ("CEQA") and
17 then sued the city for violating the CEQA).

18 Access to a party's confidential views about how to frame a legal argument is not enough
19 to support disqualification, even in the context of a prior attorney-client relationship. *N.L.A. v. City*
20 *of Los Angeles,* No. 15-cv-02431, 2016 WL 5661974, at *3 (C.D. Cal. Sept. 29, 2016) ("General
21 information about a former client's practices, including the client's litigation philosophy, that is not
22 of critical importance does not warrant disqualification.") (citing *Khani v. Ford Motor Co.*, 215
23 Cal. App. 4th 916, 921 (2013)). And as Plaintiff has already described in its briefing and at oral
24 argument, in cases in which the movant was never the attorney's client, courts have applied the
25 substantial-relationship test essentially to require that the attorney could have accessed information
26 about ***the exact same case***. *E.g., Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.
27 App. 4th 223, 237 (1999).

28 Lawyering may be a team sport. But where one's fiercest competitor joins the team and has

full access to the play calls, it is nearly certain that information exchange is limited to public facts or legal framing. Under California law, those types of information are not sufficient to support the drastic, disfavored remedy of disqualification that Uber seeks. Because Uber knew Lyft had widespread access to information in the Seattle case, it is doubtful that Uber and the Chamber shared a common interest agreement through conduct. It is even less plausible that Uber "normally" would have shared the sort of non-public, critical facts that the precedents require to warrant disqualification. Simply put, disqualification of Mr. Postman based on the Seattle litigation would be the first time a court applying California law has *ever* allowed a movant to disqualify its adversary's counsel who was never the movant's attorney and has not essentially switched sides or could access material, confidential information in the exact same case.

Dated: November 28, 2018              Respectfully submitted,

/s/ Ashley Keller

Ashley Keller (*pro hac vice*)
Travis Lenkner (*pro hac vice*)
Tom Kayes (*pro hac vice*)
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Tel: (312) 741-5220

Warren Postman (*pro hac vice*)
**KELLER LENKNER LLC**
1300 I Street, N.W. Suite 400E
Washington, D.C. 20005
Tel: (202) 749-8334

*Counsel for Plaintiff and the Putative Classes*

**[PROPOSED] ORDER**

Having considered Plaintiff's motion to alert the court to new evidence, and good cause appearing therefore, the Court hereby GRANTS the motion.

Dated: _____, 2018.        SO ORDERED.

_____
Hon. Edward M. Chen
United States District Judge

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on all ECF-registered counsel of record via the Court's CM/ECF system.

Dated: November 28, 2018.

/s/ Ashley Keller