MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger, Bar No. 095987
kent.roger@morganlewis.com
Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIVA LIMOUSINE, LTD., individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC; UBER USA, LLC; and UATC, LLC.<br><br>Defendants. | Case No. 3:18-cv-05546-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION TO ALERT THE COURT TO NEW EVIDENCE"**<br><br>Location:  Courtroom 5<br>Judge:     Hon. Edward M. Chen |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-CV-05546-EMC
DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION
TO ALERT THE COURT TO NEW EVIDENCE"

Enough is enough.  Uber's motion to disqualify Warren Postman and Keller Lenkner (together, "KL") was fully briefed on November 6.  Dkt. 69.  KL then filed a sur-reply on November 13.  Dkt. 75, 79.  The motion was argued and submitted on November 20.  Dkt. 80.  The Local Rules of this District help ensure that, at some point, the briefing on a motion ends.  Yet contrary to Local Rules, with its latest "administrative motion," KL seeks to reopen the record and reargue points it already made in briefing and during the hearing.  KL points to three declarations filed in another matter on November 16, which KL had in hand at the November 20 hearing on Uber's motion, but failed, at that time, to mention, let alone to suggest that they constituted "new evidence" worthy of the Court's consideration.  To avoid an exchange of yet more briefing, Uber consented to KL's submission of the declarations—the purported "new evidence"—*without any argument*, via stipulation.[1]  But KL did not want to stipulate to an administrative act.  Rather, it simply wanted another five-page, post-argument bite at the apple.  That is plainly improper and reflects KL's continued disregard of Local Rules.  Uber requests that the Court reject KL's latest tardy legal brief laden with argument and unsupported allegations.

**I.    KL's "Administrative Motion" Violates Local Rules**

KL's legal brief is labeled an "administrative motion," but it is no such thing.  Instead of addressing a "miscellaneous administrative matter" (L.R. 7-11), the submission offers more legal argument on a fully briefed, argued and submitted motion.  Dkt. 80 ("Court takes the matter under submission.").  The "administrative motion" does not pretend to make an *administrative* request, *e.g.*, "to exceed otherwise applicable page limitations" or "to file documents under seal."  L.R. 7-11.  Nor does it ask to the Court to take any specific administrative action.  Rather, KL uses the five-page limit for administrative motions to reargue its position.  That is not an administrative motion—it is a second (even more tardy) sur-reply.  It should be denied on that basis.

**II.   The Subject Matter Of The "New Evidence" Has Already Been Addressed**

The subject matter of the three declarations was addressed in the parties' respective submissions and is not "new."  Mr. Postman claimed in his declaration that "extensive information" was shared "with at least one other member who was not a party to the [Seattle]

---

[1] *See* Declaration of Brian C. Rocca, Ex. A.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                                             Case No. 3:18-CV-05546-EMC
DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION
TO ALERT THE COURT TO NEW EVIDENCE"

1  case." Dkt. 58 at 8.  In rebuttal to that claim, Mr. Lehotsky of the Chamber provided a detailed

2  description of the Chamber's dealings with other of its members regarding the Seattle litigation

3  and stated unequivocally that "the Chamber never shared Uber's confidential information with

4  any other Chamber member." Dkt. 70 at 7.  At the hearing, KL's advocate, Mr. Lenkner, argued

5  these points—incorrectly asserting that Uber and the Chamber "have no response to what we put

6  in the record in Mr. Postman's declaration about conversations with other Chamber members who

7  weren't parties to the case, donors, potential donors." Dkt. 91, Tr. at 25:24-26:2.  That these

8  arguments are not "new" only underscores KL's improper use of an administrative motion to

9  double down on points already made and submitted.

### III. KL Asserts "Facts" Without Supporting Evidence

While the subject matter is ground already covered, the "new evidence" does not support KL's rehashed arguments.  KL sets out to "undermine Uber's claim of a confidential, common-interest agreement with the Chamber" through *ipse dixit* pronouncements that Uber did not previously disclose that it was "aware of Lyft's involvement" in the Seattle litigation and "how involved it was." Dkt. 85, 1-2.  But, as Mr. Lehotsky explained, Uber had limited information regarding the Chamber's interactions with Lyft due to the Chamber's practice of "silo[ing]" communications.  Lehotsky Suppl. Decl., ¶ 14.  And in a motion dramatically styled to "alert the Court to new evidence," KL does not back up its argument with citations to any actual evidence, new or otherwise, that "Uber knew that Lyft was paying for the Seattle case." Dkt. 85 at 3.

Regardless, those "facts" from Lyft's lawsuit against KL are *immaterial* to Uber's disqualification motion here.  As noted in the parties' briefs and discussed at length during the hearing, there is no evidence that *Uber's confidential information* shared with the Chamber pursuant to Uber's common interest agreement was ever disclosed to Lyft or anyone else.[2]  As noted above, the Chamber's chief litigation counsel has sworn under penalty of perjury that the Chamber was careful to *not* disclose Uber's confidential information to anyone, abiding by its

---

[2] KL curiously argues that Lyft and Uber could not have a common legal interest in the Seattle litigation.  That is irrelevant because Uber shared confidential information with the Chamber under its own common interest agreement with the Chamber and that information was not shared with anyone.  But the argument also makes no sense.  Obviously both Uber and Lyft can have a similar *legal* interest in matters dealing with the classification of drivers and local ordinances.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2    Case No. 3:18-CV-05546-EMC
DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION
TO ALERT THE COURT TO NEW EVIDENCE"

common interest obligations. Lehotsky Suppl. Decl., ¶ 14 ("in no circumstance did the Chamber's counsel share Uber's confidential information with any other member"); *id*. ¶¶ 4, 13, 16, 18. Moreover, "Uber would not have worked with the Chamber on the Seattle litigation if the Chamber intended to share Uber's confidential information protected by the common interest agreement." Allen Suppl. Decl., ¶ 7(b). The record is plainly inconsistent with the "facts" that KL claims to glean from "new evidence" filed four days prior to the hearing on Uber's motion.

## IV. KL Again Seeks to Rewrite the Substantial Relationship Test

KL's latest attempt to brief the applicable legal standard—the substantial relationship test—not only fails again but also is wholly unrelated to any "new evidence." After previously inventing a non-existent, heightened substantial relationship test, KL now asks the court to accept that the test can only be satisfied if the attorney acquired information of "critical importance" in the prior representation that would be "material" to the current representation. Dkt. 85 at 3-4. KL states that such information must include "non-public facts about whether and how Uber's app allows it to exercise control over its drivers, how Uber decides to set fares, how Uber decides to pay drivers, or plans Uber might have to expand into other sectors of the transportation industry." *Id.* at 3. KL is wrong on multiple fronts.

First, if Mr. Postman's legal representations (*with* Uber in Seattle and *against* Uber here) are substantially related, there is a presumption of access to confidential information, and disqualification is mandatory. Dkt. 40 at 18-19; Dkt. 69 at 1, 6-7; Dkt. 72 at 5. That is this case.

Second, the category of information KL considers to be material—information properly characterized as "relating to Uber's business model"—is precisely the type of information Uber shared with the Chamber. The Court need only look to the declarations of Mr. Lehotsky, Mr. Allen, and Ms. Bramer for definitive statements that Uber repeatedly shared confidential information with the Chamber concerning its business model. *E.g.,* Allen Suppl. Decl., ¶¶ 4(b), 5(b), 8(b) and Ex. 1; Lehotsky Suppl. Decl., ¶¶ 8(b), 16, 18 and Ex. 9; Bramer Decl., ¶ 12.[3] KL

---

[3] KL argues that it "strains credulity" that Uber would share confidential information with the Chamber because the Chamber was also communicating with Uber's "fiercest competitor." Dkt. 85 at 3. Uber had a common interest agreement with the Chamber precisely because it sought to protect confidential information—and the parties (Uber and Chamber) respected the agreement.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                                          Case No. 3:18-CV-05546-EMC
DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION
TO ALERT THE COURT TO NEW EVIDENCE"

1 cannot credibly allege that Uber did not share this type of information with the Chamber. And to
2 attack Uber for not disclosing the details of this information during a public hearing and to
3 litigation adversaries is to advocate for the "ironic result" that to protect the privilege, Uber must
4 destroy the privilege. *See Acacia Patent Acquisition, LLC v. Sup. Ct.*, 234 Cal. App. 4th 1091,
5 1106. That is not the law and is the very reason why courts *presume* that the attorney in Mr.
6 Postman's situation had access to confidential information in the prior matter. *Flatt v. Sup. Ct.*, 9
7 Cal. 4th 275, 283 (1994); Dkt. 72 at ¶ 10(b).

Third, KL's characterization of what it believes is "material" is contrary to the sound approach taken by courts that have "counseled against construing the 'substantial relationship' test too narrowly." *Oliver v. SD-3C, LLC*, 2011 WL 13146460, at *3 (N.D. Cal. Aug. 4, 2011). "Materiality" encompasses an inquiry into many factors and is certainly not limited to whether the attorney acquired information concerning a business model. That is just one example, which Uber satisfies. Other examples of material information shared confidentially by Uber with the Chamber include: core attorney work product; legal memoranda providing guidance on litigation strategy, key issues and legal claims; and drafts and redlines of briefs and complaints. Lehotsky Decl., ¶¶ 14, 19; Bramer Decl., ¶11 and Ex. 2; Allen Decl., ¶¶ 11-12, 23 and Ex. 3.

**V.     Conclusion**

KL's motion violates Local Rules and improperly seeks the final word on Uber's now submitted motion. The subject of the "new evidence" is not new. The declarations are inaccurately portrayed and immaterial to Uber's motion. In fact, the declarations only demonstrate that another party with which Mr. Postman worked while at the Chamber is seriously concerned about KL's misconduct. The administrative request should be denied, the motion to disqualify should be granted, and the case should proceed to the next phase with Robins Kaplan LLP representing Plaintiff.

Dated: November 30, 2018

                                                 */s/ Brian C. Rocca*
                                                 Brian C. Rocca
                                                 MORGAN, LEWIS & BOCKIUS LLP

                                                 *Attorneys for Defendants*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4   Case No. 3:18-CV-05546-EMC
DEFENDANTS' OPPOSITION TO PLAINTIFF'S "ADMINISTRATIVE MOTION
TO ALERT THE COURT TO NEW EVIDENCE"