MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger, Bar No. 095987
kent.roger@morganlewis.com
Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DIVA LIMOUSINE, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC; UBER USA, LLC; and UATC, LLC,<br><br>Defendants. | Case No. 3:18-cv-05546-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)**<br><br>Date:      May 30, 2019<br>Time:      1:30 pm<br>Location:  Courtroom 5<br>Judge:     Hon. Edward M. Chen |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on May 30, 2019, at 1:30 pm, in Courtroom 5 of this

3 Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants

4 Uber Technologies, Inc.; Rasier, LLC; Rasier-CA, LLC; Uber USA, LLC; and UATC, LLC

5 (collectively, "Uber") will and hereby do move the Court to dismiss the First Amended

6 Complaint ("FAC") filed by Plaintiff Diva Limousine, Ltd. ("Diva") pursuant to Federal Rule of

7 Civil Procedure Rule 12(b).

8      This Motion seeks dismissal of the action because: (1) Diva fails to allege sufficient facts

9 in support of minimal diversity and thus provides no basis for subject matter jurisdiction; (2) Diva

10 fails to state a claim upon which relief can be granted under California's Unfair Practices Act

11 ("UPA") and Unfair Competition Law ("UCL"); and (3) the Court should decline to exercise

12 jurisdiction under the "home-state controversy" exception to the Class Action Fairness Act of

13 2005 ("CAFA").

14      This Motion is supported by the following memorandum of points and authorities, the

15 [proposed] order filed herewith, the pleadings and papers on file herein, and such other matters

16 that may be presented to the Court at the hearing.

17

## ISSUES TO BE DECIDED

18     1.    ***Minimal Diversity***.  Should the Court dismiss the FAC under Fed. R. Civ. P.

19 12(b)(1) for lack of subject matter jurisdiction because Diva fails to allege minimal diversity?

20     2.    ***UPA***.  Should the Court dismiss Diva's claim under the UPA pursuant to Fed. R.

21 Civ. P. 12(b)(6) and the statutory exemption in Cal. Bus. Prof. Code § 17024 because it fails to

22 state a claim upon which relief can be granted?

23     ***3***.    ***UCL***.  Should the Court dismiss Diva's claim under the UCL pursuant to Fed.

24 Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted?

25     3.    ***"Home-State Controversy" Exception to CAFA***.  Should the Court decline to

26 exercise jurisdiction under 28 U.S.C. § 1332(d)(4)(B) because the putative out-of-state class

27 members lack standing, and thus two-thirds or more of the remaining members of the proposed

28 class and the primary defendants are citizens of California?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS ........................................................................... 2

III.    LEGAL STANDARDS ................................................................................. 5

    A.   Rule 12(b)(1) ..................................................................................... 5

    B.   Rule 12(b)(6) and Article III Standing ................................................... 7

IV.     DIVA'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE DIVA HAS FAILED TO ALLEGE "MINIMAL DIVERSITY" ................... 8

V.      DIVA'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ................................................................ 10

    A.   Diva Fails To Allege Why Section 17024 Does Not Exempt Uber's Services From The Coverage Of The UPA .......................................... 10

        1.   The Plain Meaning Of The Language Of The UPA Establishes That The Public Utilities Commission's Jurisdiction Determines Whether Products or Services Are Excluded From The UPA's Coverage. .................................................................................... 11

        2.   *Hladek*, The Only California Precedent Interpreting The UPA Exemption, Strongly Supports Its Applicability Here ............................. 13

        3.   Diva's FAC Alleges CPUC Jurisdiction Over Uber. ............................ 13

    B.   Diva Fails To Allege Sufficient Facts To Support Its UPA Claim ..................... 15

    C.   Diva's UCL Claim Is Still Defective ......................................................... 17

        1.   Diva Fails To Allege Uber's Conduct Is "Unfair" Under The UCL......... 17

        2.   Diva Lacks Standing To Bring A Claim Under The "Unlawful" Prong ...................................................................................... 18

            a.   Diva's Failure To Allege Causation Defeats The Entire Claim ................................................................................. 18

            b.   Diva's Allegations Regarding Out-of-State Limousine Companies Raise Causation Issues Unique To The Affiliates ........................................................................... 21

VI.     IF THE COURT DISMISSES THE CLAIMS OF OUT-OF-STATE AFFILIATES IT MUST DECLINE TO EXERCISE JURISDICTION UNDER CAFA'S "HOME-STATE CONTROVERSY" EXCEPTION ......................................... 22

VII.    LEAVE TO AMEND SHOULD NOT BE GRANTED .................................... 23

VIII.   CONCLUSION .................................................................................... 24

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*A White and Yellow Cab, Inc. v. Uber Technologies, Inc.,*
5
    No. 15-cv-05163, Dkt. No. 114 (N.D. Cal. Mar. 5, 2018) .......................................................13

6

*Abrego v. Dow Chem. Co.,*
    443 F.3d 676 (9th Cir. 2006) .................................................................................................8

7

*Anirudh v. CitiMortgage, Inc.,*
8
    598 F. Supp. 2d 448 (S.D.N.Y 2009) ....................................................................................6

9

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006) ............................................................................................................20

10

*Apple Inc. v. Psystar Corp.,*
11
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................................7

12
*Ashcroft v. Iqbal,*
13
    556 U.S. 662 (2009) ..............................................................................................................7

14
*Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters,*
    459 U.S. 519 (1983) ..............................................................................................................6
15

16
*Bautista v. Pan Am. World Airlines, Inc.,*
    828 F.2d 546 (9th Cir. 1987) ................................................................................................8

17
*Bell Atlantic Corp. v. Twombly,*
18
    550 U.S. 544 (2007) ..............................................................................................................7

19
*Brandt v. Bay City Super Market,*
    182 F. Supp. 937 (N.D. Cal. 1960) .....................................................................................10
20

21
*Brooke Grp. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993) ............................................................................................................18

22
*Campagna v. Language Line Services, Inc.,*
23
    No. 5:08-CV-02488-EJD, 2012 WL 1565229 (N.D. Cal. May 2, 2012) ...............................6

24
*Canyon Cty. v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008) ...............................................................................................20
25

26
*Capo for Better Representation v. Kelley,*
    158 Cal. App. 4th 1455 (2008) ............................................................................................11

27
*Cargill, Inc. v. Monfort of Colorado, Inc.,*
28
    479 U.S. 104 .......................................................................................................................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Cascade Health Sols. v. PeaceHealth*,
   502 F.3d 895 (9th Cir. 2007)...............................................................................18

5

*Cel-Tech Commn'cs, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) .......................................................................................17

6

7

*Cortez v. McClatchy Newspapers, Inc.*,
   No. 2:15-cv-01891-TLN-EFB, 2016 WL 3181200 (E.D. Cal. June 7, 2016) .........................23

8

9

*Daro v. Superior Ct.*,
   151 Cal. App. 4th 1079 (2007).............................................................................19

10

*Dean v. United States*,
   556 U.S. 568 (2009) ..........................................................................................11

11

12

*Desoto Cab Company, Inc. v. Uber Technologies, Inc.*,
   No. 16-cv-06385, Dkt. No. 64 (N.D. Cal. Sept. 24, 2018) .......................................13

13

14

*Ellis v. Montgomery Cty.*,
   267 F. Supp. 3d 510 (E.D. Pa. 2017) .....................................................................6

15

*Gold v. New York Life Ins. Co.*,
   No. 09 CIV. 3210 WHP, 2012 WL 1674300 (S.D.N.Y., May 14, 2012) .........................7

16

17

*Graphic Commc'n Local IB Health & Welfare Fund A v. CVS Caremark Corp.*,
   636 F.3d 917 (8th Cir. 2011)...............................................................................6

18

19

*Hladek v. City of Merced*,
   69 Cal. App. 3d 309 (1977)........................................................................11, 12, 13

20

*Kanter v. Warner–Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001)...........................................................................6, 8

21

22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...........................................................................................5

23

24

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014)...............................................................................7

25

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................7, 18, 20

26

27

*Lungren v. Deukmejian*,
   45 Cal. 3d 727 (1988) .......................................................................................11

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii                                              Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Marroquin v. Wells Fargo, LLC*,
    No. 11 CV163-L BLM, 2011 WL 476540 (S.D. Cal., Feb. 3, 2011) ................................5, 8, 9

*Morongo Band of Mission Indians v. California State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988).................................................................................................5

*Morrison v. YTB Intern, Inc.*,
    649 F.3d at 536.......................................................................................................................6

*Overton v. Uber Techs., Inc.*,
    333 F. Supp. 3d 927 (N.D. Cal. 2018) ..................................................................................20

*Park v. Webloyalty.com, Inc.*,
    No. 12CV1380-LAB JMA, 2013 WL 4711159 (S.D. Cal., Aug. 30, 2013) ........................6, 9

*Parks Sch. of Bus. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995)...................................................................................................7

*Philadelphia Taxi Association, Inc v. Uber Technologies, Inc.*,
    886 F.3d 332 (3d Cir. 2018)..................................................................................................18

*Quesada v. Herb Thyme Farms Inc.*,
    No. CV 11-0016 ODW SSX, 2011 WL 1195952 (C.D. Cal. Mar. 28, 2011) ........................23

*Rodriguez v. Instagram, LLC*,
    No. C 12-06482 WHA, 2013 WL 3732883 (N.D. Cal. Jul. 15, 2013) .....................................6

*Rooney v. Sierra Pac. Windows*,
    No. 10-CV-00905-LHK, 2011 WL 5034675 (N.D. Cal. Oct. 11, 2011) ................................19

*Rotenberg v. Brain Research Labs LLC*,
    No. C-09-2914 SC, 2009 WL 2984722 (N.D. Cal. Sept. 15, 2009) .......................................23

*Smith v. McCullough*,
    270 U.S. 456 (1926).................................................................................................................8

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011).................................................................................................7

*Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979)...................................................................................................5

*Tosco Corp. v. Communities for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) (per curiam), *abrogated on other grounds by*
    *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ............................................................................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv                                         Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Uber Technologies Pricing Cases,*
No. CJC-17-004925, 2018 Cal. Super. LEXIS 1913 (Mar. 2, 2018), *appeal docketed,* No. A154694 ...................................................................................13

*Valdez v. Asset Acceptance*, LLC,
No., 12-CV-1735-L-JMA, 2012 WL 2905715 (S.D. Cal., July 16, 2012) ...........................6, 9

*Watson v. United States*,
552 U.S. 74 (2007) ...................................................................................11

**STATUTES**

28 U.S.C. § 1332 ...................................................................1, 2, 6, 8, 9, 10, 22

Cal. Pub. Util. Code
§ 728.5 ...................................................................................12
§ 5351, et seq. ...................................................................................13
§ 5360 ...................................................................................14
§ 5430 ...................................................................................14
§ 5431(a) ...................................................................................14
§ 5440 ...................................................................................14

Cal. Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*........................................ passim

Cal. Unfair Practices Act, Bus. & Prof. Code §§ 17000 *et seq.*............................................. passim

**RULES**

Fed. R. Civ. P.
8(a)(1) ...................................................................................5
12(b)(1) ...................................................................................5, 6, 8
12(b)(6) ...................................................................................7, 10

**REGULATIONS**

Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry, Cal. PUC Decision No. 13-09-045 (Sept. 19, 2013) [http://www.cpuc.ca.gov], available at 2013 WL 10230598 ...................................................................................14

**OTHER AUTHORITIES**

Cal. Antitrust and Unfair Competition Law, § 18.03[C] (2017) ......................................................12

Cal. Civ. Prac. Business Litigation §60:43 (Exemptions) (2018) ......................................................12

v

Case No. 3:18-cv-05546-EMC

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3   Cal. Const.
    art. III.................................................................................................................7, 18, 20
4   art. XII, §§ 4, 6.........................................................................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1

## I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

2

In lieu of responding to Uber's motion to dismiss, Diva opted to amend its complaint.

3

The First Amended Complaint ("FAC") remains defective and must be dismissed.

4

Uber's presence in California may be disruptive for market incumbents like Diva, a

5

limousine company that has enjoyed decades of business in California, but Uber has dramatically

6

enhanced competition in the form of lower prices, increased output, improved consumer choice,

7

and innovation.  Threatened by Uber's competitive offering, Diva invites the Court to undermine

8

consumer welfare in California by ordering an *increase* in prices based on an inapplicable

9

statute—the California Unfair Practices Act ("UPA").  Diva also seeks, based on mere

10

speculation and self-defeating allegations, a sweeping injunction under California's Unfair

11

Competition Law ("UCL") that would void or rewrite existing agreements between Uber and tens

12

of thousands of independent contractor drivers in California who are not before the Court.

13

At the threshold, although Diva's two counts substantively fail to state a claim, the Court

14

need not reach those issues.  As in its original complaint, Diva again fails to allege minimal

15

diversity, thus requiring dismissal.  Diva does not identify any specific "affiliates" or allege any

16

well-pled facts about the nature and citizenship of any purported affiliate.  But Diva, the party

17

invoking CAFA jurisdiction, is required to plead such affirmative facts related to citizenship to

18

show that minimal diversity exists.  Merely alleging (on information and belief) that some

19

putative class members are "incorporated in states other than California" (FAC ¶ 28), or

20

describing them as "non-California limousine companies," (FAC ¶ 45) does not satisfy Diva's

21

burden to *affirmatively* and *distinctly* allege the citizenship of each party upon whom diversity is

22

based.  Diva's FAC is again premised on "hypothetical jurisdiction" and thus cannot stand.  *See*

23

*Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999); *Steel Co. v. Citizens for a Better*

24

*Env't*, 523 U.S. 83, 109-10 (1998).

25

Although the Court need not address the sufficiency of Diva's two claims for relief, Uber

26

addresses their fatal defects here in light of Federal Rule of Civil Procedure 12(b), which requires

27

Uber to assert its other pleading defenses in this motion.

28

With respect to Diva's UPA claim for alleged below-cost and loss leader sales, Cal. Bus.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1    Prof. Code § 17024(1) expressly excludes from the definition of "article[s] or product[s]" subject

2    to the UPA "any service, article or product for which rates are established *under the jurisdiction*

3    *of the Public Utilities Commission*…."  Based on the plain language of § 17024(1), and the

4    California Court of Appeal's application of it in *Hladek v. City of Merced*, 69 Cal. App. 3d 585

5    (1977), every court to subsequently consider the issue has concluded that Uber's services are

6    exempt from the UPA's coverage because rates for Uber's services "are established *under the*

7    *jurisdiction*" of the California Public Utilities Commission ("CPUC").[1]

8         Diva's UCL claim seeks extraordinary relief—an injunction voiding contracts between

9    Uber and thousands of drivers who are not before the Court.  But Diva again pleads itself out of

10   Court.  According to its own allegations, Diva would suffer the same injury regardless of whether

11   Uber had committed the purported UCL violation (*i.e.,* regardless of driver

12   classification).  Where, as here, a complaining party would allegedly suffer the same harm

13   whether or not a defendant complied with the law, any causal connection is broken and plaintiff

14   has no standing to sue.  And with respect to the unidentified out-of-state "affiliates" (whose

15   claims provide the only theoretical hook for CAFA jurisdiction), Diva has not alleged a plausible

16   connection between their speculative out-of-state losses and Uber's conduct in California.

17        The attenuated theory of harm as to unidentified "affiliates" is also fatal to CAFA

18   jurisdiction.  In the absence of out-of-state affiliates in the purported class, the FAC is left only

19   with California-based class members seeking relief from California-based defendants.  Thus,

20   Diva cannot clear CAFA's jurisdictional hurdle that more than one-third of the aggregate class be

21   citizens of other states.  This action is therefore plainly a "home-state controversy" and the Court

22   should decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(4)(B).

23   **II.   STATEMENT OF FACTS**[2]

24        **Allegations About The Putative Plaintiff Classes**.  Diva is a California limousine

25   company suing on behalf of two proposed classes, a purported UCL class and a purported UPA

26   ───────────────────────────

27   [1]  Diva also fails to plead the requisite facts to support a UPA claim (*see* Section V.B. below), but the Court need not address that failing in light of the statutory exemption.

28   [2]  Uber refers to these allegations solely for purposes of this motion to dismiss, but disagrees with many of them and expressly reserves any and all defenses.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                        Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

class.  FAC ¶ 26.  Both classes include "business entities that provided limousine and chauffeur-driven ground transportation services within California" (hereafter "California limousine companies") and "business entities outside of California that earned revenue from the provision of limousine or chauffeur-driven ground transportation services in California through affiliate relationships" (hereafter "out-of-state affiliates").  FAC ¶¶ 48 (UCL), 58 (UPA).  Diva alleges that "[m]embers of each of the proposed classes … includes citizens of states different from Defendants," of which "[f]ewer than two-thirds of proposed class members are citizens of California."  *Id.* ¶ 27.  The putative class members that allegedly account for more than one-third of the class are out-of-state affiliates, *i.e.*, companies that "book limousine and chauffeur-driven rides for their customers traveling within California by referring or 'farming out' that business to California-based companies …."  *Id.*  The FAC does not identify any specific affiliate.  It just generally alleges that "these affiliates have lost revenue" as a "result of Uber's unlawful practices."  *Id.* ¶ 45.  Diva does not specifically allege either the corporate status or the principal place of business of any unnamed out-of-state affiliates, nor does it identify the state under whose laws they are incorporated or organized.  Rather, it merely alleges that it is "informed and believes that the overwhelming majority of these companies that have their principal place of business in states other than California are also incorporated in states other than California."  *Id.* ¶ 28.  Notably, the FAC is silent about whether Diva is informed or believes the out-of-state affiliates are incorporated in states other than Delaware (the state of Uber's incorporation).

**Defendants: California-Based, CPUC-Licensed Charter-Party Carriers.**  Defendants Uber Technologies, Inc.; Rasier, LLC; Rasier-CA; Uber USA, LLC; and UATC, LLC are alleged to be citizens of California (principal place of business) and Delaware (state of incorporation or organization).  FAC ¶¶ 17-21.  Uber offers a service whereby "riders use a smartphone app to request service at the time of need and are notified of the wait time for a vehicle and their expected time of arrival."  *Id.* ¶ 80.  In 2013, following Uber's entry into California, the CPUC created a subcategory of charter-party carrier licenses for Transportation Network Companies ("TNCs").  *Id.* ¶ 85.  TNCs are defined under the Public Utility Code as "any entity 'that provides prearranged transportation services for compensation using an online-enabled application or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

platform to connect passengers with drivers using a personal vehicle.'" *Id.* With respect to the CPUC's jurisdiction over defendants, Diva alleges as follows:

- In 2014, Rasier-CA, LLC obtained a TNC license from the CPUC to operate as a charter-party carrier. *Id.* ¶ 86.

- In 2017, UATC, LLC obtained a TCP permit from the CPUC to operate as a charter-party carrier. *Id.* ¶ 87.

- In May of 2018, the CPUC determined that Uber Technologies Inc. "must register as a transportation company going forward," and Uber Technologies Inc. "now has an active TCP permit and a pending TNC permit." *Id.* ¶ 88.

Diva alleges that the CPUC has not actually "established the rates charged" by TNCs or TCPs. *Id.* ¶ 89. However, the CPUC "has issued a rulemaking, which found that Uber Technologies Inc. is a transportation company, both as a transportation network company (TNC) and charter-party carrier (TCP)." *Id.* ¶ 94. The CPUC "authoriz[es] [TCP license holders] to provide pre-booked transportation to passengers" and requires that TCP license holders adhere to certain obligations, such as obtaining specialized insurance coverage, enrolling in controlled substance and alcohol testing programs, and complying with certain vehicle inspection regulations. *Id.* ¶¶ 38, 40.

**The Alleged Conduct.** Diva alleges that Uber's lower prices take market share from Diva and constrain its ability to charge higher prices. *Id.* ¶ 10. Diva has lost business opportunities and has received "complaints concerning pricing from customers" in light of Uber's lower prices. *Id.* ¶ 41. Thus, Diva "has been compelled not to raise its rates." *Id.* ¶ 42. Diva alleges that the price competition, and resulting loss of business, have occurred while Uber has classified drivers as independent contractors. *Id.* ¶¶ 6, 9. But it also alleges that Uber prices rides "below its total average costs," even without counting Uber's alleged savings from avoiding the cost of providing employment benefits. *Id.* ¶¶ 13-14. Uber allegedly receives "billions of dollars of subsidies" from investors and allegedly uses that "cash as a competitive weapon." *Id.* ¶¶ 14, 133, 146-149. Diva contends that "[t]he only rational purpose for subsidizing rides…is to drive enough competitors out of business to be able to raise prices down the road." *Id.* ¶ 146. Diva alleges that Uber is using "$13 billion in cash its investors provided…to subsidize the many years of predatory competition required to drive out more efficient incumbents." *Id.* ¶ 147.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1   Diva also alleges that Uber is misclassifying drivers as independent contractors rather than

2   as employees, allegedly saving it millions each year.  *Id.* ¶¶ 112, 120-121.

3   **The Claims For Relief.**  Based on these allegations, Diva alleges two claims:  (1)

4   unlawful and unfair business practices in violation of California Business and Professions Code

5   Section 17200 for which Diva and the UCL class seek an injunction; and (2) predatory pricing

6   and loss leader sales in violation of the California Business and Professions Code Sections 17043

7   and 17043 for which Diva and the UPA class seek damages.  With respect to its requested UCL

8   injunction, Diva requests that Uber be enjoined from continuing or maintaining "any practice,

9   plan, program, or device" by which it enters into agreements with drivers classifying those

10   individuals as independent contractors.  *Id.* ¶ 165(b).  Diva does not allege how drivers who

11   prefer their current contractual arrangement would be able to protect against impairment of those

12   rights.

13   **III.   LEGAL STANDARDS**

14       **A.   Rule 12(b)(1)**

15   Unlike state courts, "[f]ederal courts are courts of limited jurisdiction.  They possess only

16   that power authorized by Constitution and statute, which is not to be expanded by judicial decree.

17   It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

18   establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life*

19   *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Jurisdiction presents a threshold

20   consideration, and federal courts look to the original complaint to determine whether subject

21   matter jurisdiction existed at the time the action was commenced.  *Morongo Band of Mission*

22   *Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988).

23   The Federal Rules of Civil Procedure require "a short and plain statement of the grounds

24   for the court's jurisdiction."  Fed. R. Civ. P. § 8(a)(1).  Diva, the party asserting federal

25   jurisdiction, bears the burden of demonstrating the grounds under which the Court may accept

26   subject matter jurisdiction over the action.  *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L

27   BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011) (citing *Thornhill Publ'g Co. v. General*

28   *Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  That means "the party invoking the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

Court's jurisdiction is required to plead the citizenship of parties, sufficiently to show that diversity exists." *Park v. Webloyalty.com, Inc.*, No. 12CV1380-LAB JMA, 2013 WL 4711159, at *1 (S.D. Cal. Aug. 30, 2013) (citing *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  It is for the plaintiff to plead facts to establish diversity, not for the court to assume facts.  *Id.* (citing *Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526, (1983) ("It is not ... proper to assume [the plaintiff] can prove facts that it has not alleged ....")).  Mere "prospective assertions" regarding key jurisdictional facts, as opposed to well-pled facts that are "presently affirmative and distinct," are insufficient to satisfy the specific pleading requirements for diversity jurisdiction.  *Valdez v. Asset Acceptance*, LLC, No., 12-CV-1735-L-JMA, 2012 WL 2905715, at *2 (S.D. Cal. July 16, 2012).

CAFA vests federal courts with "original" diversity jurisdiction over class actions.  *Campagna v. Language Line Services, Inc.*, No. 5:08-CV-02488-EJD, 2012 WL 1565229 at *2 (N.D. Cal. May 2, 2012).  To establish CAFA jurisdiction, "a plaintiff must demonstrate (1) that the amount-in-controversy exceeds five million dollars and (2) that the parties are 'minimally diverse.'"  *Rodriguez v. Instagram, LLC*, No. C 12-06482 WHA, 2013 WL 3732883 at *2 (N.D. Cal. Jul. 15, 2013).  Even if the plaintiff establishes minimal diversity, the court "shall decline to exercise jurisdiction under Section 1332(d)(2) where 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'"  *Id.* (citing 28 U.S.C. § 1332(d)(4)(B)); *see also Campagna*, 2012 WL 1565229 at *2 ("CAFA giveth, but CAFA also taketh away.").  If applicable, the "home-state controversy" exception is mandatory.  28 U.S.C. § 1332(d)(4) (district court "*shall decline*" jurisdiction) (emphasis added).  *See, e.g., Ellis v. Montgomery Cty.*, 267 F. Supp. 3d 510, 513 n.1, (E.D. Pa. 2017) ("[C]ourts regularly consider the CAFA exceptions under Rule 12(b)(1) since they present a threshold issue concerning the exercise of jurisdiction."); *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 454 (S.D.N.Y 2009) (granting Rule 12(b)(1) motion because action fell within home-state exception).[3]

---

[3] Some courts construe CAFA exceptions as an abstention doctrine.  *Graphic Commc'n Local IB Health & Welfare Fund A v. CVS Caremark*, 636 F.3d 917, 973 (8th Cir. 2011); *Morrison v. YTB*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1

### B.      Rule 12(b)(6) and Article III Standing

2        A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims

3  alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  The court

4  must take all well-pled allegations of material fact as true, but "[l]abels and conclusions, and a

5  formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss],"

6  and "courts are not bound to accept as true a legal conclusion couched as a factual

7  allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks

8  and citation omitted).  A court must disregard unreasonable inferences or legal

9  characterizations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10        To survive a motion to dismiss for failure to state a claim the plaintiff's factual allegations

11  must suggest that the claim "has at least a plausible chance of success."  *Levitt v. Yelp! Inc.*, 765

12  F.3d 1123, 1135 (9th Cir. 2014).  "First, to be entitled to the presumption of truth, allegations in a

13  complaint or counterclaim may not simply recite the elements of a cause of action, but must

14  contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

15  party to defend itself effectively.  Second, the factual allegations that are taken as true must

16  plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to

17  be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202,

18  1216 (9th Cir. 2011).  Moreover, the court need not credit allegations that are "internally

19  contradictory."  *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200 (N.D. Cal. 2008).

20        Also, to satisfy the "constitutional minimum" of Article III standing, a plaintiff must show

21  (1) injury-in-fact that is "concrete and particularized" and "actual or imminent," not "conjectural

22  or hypothetical"; (2) a causal connection between the injury and alleged wrongdoing, *i.e.*, injury

23  that is traceable to the challenged action of the defendant and not the result of the independent

24  action of third parties; and (3) the injury is "likely" redressed by a favorable decision, and not

25  "merely speculative."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

26

*Intern*, 649 F.3d 533, 536 (7th Cir. 2011).  Whether evaluated under Rule 12 or as an abstention

27  doctrine under 28 U.S.C. § 1332(d)(4) the end result is the same: dismissal of the action.  *See*

*Gold v. New York Life Ins. Co.*, No. 09 CIV. 3210 WHP, 2012 WL 1674300, at *1 (S.D.N.Y.

28  May 14, 2012) ("motion requesting that this Court decline to exercise jurisdiction is granted.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                              Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1

2

**IV.    DIVA'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE DIVA HAS FAILED TO ALLEGE "MINIMAL DIVERSITY"**

3

Diva asserted federal CAFA jurisdiction, FAC ¶ 26, under which this Court has

4

jurisdiction over "any civil action in which the matter in controversy exceeds... $5,000,000... and

5

is a class action in which the parties satisfy, among other requirements, minimal diversity."

6

*Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006).  In <u>all</u> diversity cases, including

7

claims brought under CAFA, the complaint must *affirmatively* allege the state of citizenship of

8

each party.  *Marroquin*, 2011 WL 476540, at *1 (citing *Bautista v. Pan Am. World Airlines, Inc*.,

9

828 F.2d 546, 551 (9th Cir. 1987) and *Kanter v. Warner–Lambert, Co*., 265 F.3d at 853).

10

11

12

> A plaintiff suing in a federal court must show in his pleading, *affirmatively and distinctly*, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.

13

*Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam),

14

*abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (quoting *Smith v.*

15

*McCullough*, 270 U.S. 456, 459 (1926)) (emphasis added).

16

For all cases seeking to invoke federal diversity jurisdiction, including under CAFA, a

17

corporation is a citizen of both the state of incorporation and the state where it has its principal

18

place of business.  28 U.S.C. § 1332(c)(1).  With respect to unincorporated associations (such as

19

limited liability companies), CAFA provides that such entities are citizens both of the state where

20

they have their principal place of business and the state under whose laws they are organized.  28

21

U.S.C. § 1332(d)(10).  To establish "minimal diversity" for purposes of CAFA, the complaint

22

must allege facts demonstrating at least one putative class member is diverse from any defendant.

23

28 U.S.C. § 1332(d)(2)(A) (minimal diversity where "any member of a class of plaintiffs is a

24

citizen of a State different from any defendant").

25

Diva is bringing claims on behalf of a putative class of California limousine companies

26

and out-of-state affiliates.  FAC ¶¶ 48, 58.  Diva claims it has alleged CAFA jurisdiction solely

27

based upon the purported inclusion of out-of-state affiliates in its class definition.  *See* FAC

28

¶¶ 27-29.  In its first motion to dismiss, Uber pointed out that Diva failed to properly allege

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1    minimal diversity to invoke CAFA jurisdiction.  ECF No. 100 (Motion to Dismiss) at 10-12.

2    Rather than responding, Diva chose to voluntarily amend, but it still has inexplicably failed to

3    cure this fundamental jurisdictional defect.

4           Diva alleges it is a California corporation headquartered in Studio City, California.  FAC

5    ¶ 16.  Diva alleges each defendant is a Delaware corporation (or Delaware LLC) that is

6    headquartered in San Francisco, California.  FAC ¶¶ 17-21.  Each named party is thus a citizen of

7    California for purposes of CAFA.  In a failed effort to allege minimal diversity, Diva alleges only

8    that it is "informed and believes that the overwhelming majority of [out-of-state affiliates] that

9    have their principal place of business in states other than California are also incorporated in states

10   other than California."  FAC ¶ 28.  "A complaint alleging diversity of citizenship upon

11   'information and belief' is insufficient to confer jurisdiction."  *Sylver v. Titan Digital Media*

12   *Ventures, LLC*, No. CV 09-3013-JFW(MANX)) 2009 WL 1616118, at *2 (C.D. Cal. June 8,

13   2009) (citing *America's Best Inns, Inc. v. Best Inns of Abeline, L.P.*, 980 F.2d 1072, 1074 (7th

14   Cir. 1992) and *Bradford v. Mitchell Bros. Truck Lines*, 217 F. Supp. 525, 527 (N.D. Cal. 1963)).

15          Nor may Diva merely plead a conclusion that parties are citizens of different states.  *Park*,

16   2013 WL 4711159, at *1.  A party invoking diversity jurisdiction "should be able to allege

17   affirmatively the actual citizenship of the relevant parties."  *Kanter*, 265 F.3d at 857 (rejecting

18   diversity where party seeking federal jurisdiction "merely alleged that [relevant parties] were not

19   citizens of California"); *Sepehry-Fard v. Countrywide Home Loans. Inc*., No. 13-CV-05769-BLF,

20   2014 WL 2707738, at *3 (N.D. Cal. June 13, 2014) (facts supporting diversity must be stated "on

21   the face of the complaint") (citing *Kanter*, 265 F.3d at 857).

22         "[I]t is for [Diva] not the Court" to plead facts to establish minimal diversity.  *Park*, 2013

23   WL 4711159, at *1 ("failure to plead facts establishing diversity requires that the complaint be

24   dismissed without regard to the merits.").  Diva, despite amending, has still not done so and

25   dismissal is thus required.  *See, e.g., Marroquin*, 2011 WL 476540, at *2 (dismissing action

26   because "Plaintiff has not alleged minimal diversity under CAFA"); *Park*, 2013 WL 4711159, at

27   *1, 3 (dismissing purported CAFA action because "the Court must address these serious

28   jurisdictional issues at the outset"); *Valdez*, 2012 WL 2905715, at *2 (dismissal of "class action in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

its entirety for lack of subject matter jurisdiction" because "the complaint does not allege facts necessary to establish diversity jurisdiction as required by 28 U.S.C. § 1332."); *Brandt v. Bay City Super Market*, 182 F. Supp. 937, 940 (N.D. Cal. 1960) (it is "presumed that the Court does not have jurisdiction" and "the complaint must be dismissed" where it "does not set forth the required short and plain statement of the facts" supporting diversity).

As the Supreme Court has held:

> Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning. Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.

*Steel Co.*, 523 U.S. at 101; *see also Ruhrgas A.G.*, 526 U.S. at 583 ("*Steel Co.* held that Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").  Diva's FAC again asserts only "hypothetical jurisdiction," which is plainly insufficient.  The FAC should be dismissed.

## V.   DIVA'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

### A.   Diva Fails To Allege Why Section 17024 Does Not Exempt Uber's Services From The Coverage Of The UPA

Section 17043 of the Unfair Practices Act ("UPA") provides:

> It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

Cal. Bus. Prof. Code § 17043.  But the UPA provides an express exemption:

> Nothing in this chapter applies:
> (1)  To any service, article or product for which rates are established *under the jurisdiction of the Public Utilities Commission* of this State and sold or furnished by any public utility corporation, or installation and repair services rendered in connection with any services, articles or products.

Cal. Bus. Prof. Code § 17024(1) (emphasis added).

The gravamen of Diva's FAC is that Uber is a "transportation company" that provides a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"transportation service" and is in the business of "transporting people."  *E.g.*, FAC ¶¶ 4, 94, 100.

Diva also repeatedly alleges that CPUC has exercised jurisdiction over Uber.  *See id.* ¶¶ 36, 40,

79-88.  Given these allegations, in order to state a predatory pricing claim under the UPA, Diva

must also allege why Uber's "business activity" is "outside the exemption in Business and

Professions Code section 17024."  *Hladek v. City of Merced*, 69 Cal App. 3d 585, 591 (1977).

"Such allegations are essential in order to hold that the Public Utilities Commission would not

have had *jurisdiction to set rates* for [defendant's] transportation service…."  *Id.*  (emphasis

added).  Here, Diva has failed to allege that the Uber services described in the FAC are outside

the exemption in Section 17024, nor could it amend to do so.  The UPA claim should thus be

dismissed without leave to amend.

### 1. The Plain Meaning Of The Language Of The UPA Establishes That The Public Utilities Commission's *Jurisdiction* Determines Whether Products or Services Are Excluded From The UPA's Coverage.

The Legislature's use of the passive voice in Section 17024(1) is significant.  The

Legislature excluded certain products and services from the UPA's reach using the passive voice:

if "rates are established under the jurisdiction of" the CPUC.  Under the statute's language, it

does not matter *who* sets the rates, as long as the rates are established *under the jurisdiction* of

the CPUC.  *See Dean v. United States,* 556 U.S. 568, 572 (2009) ("The passive voice focuses on

an event that occurs without respect to a specific actor .…"); *Watson v. United States,* 552 U.S.

74, 81 (2007) (use of passive voice in statutory phrase "to be used" reflects "agnosticism.…about

who does the using"); *Capo for Better Representation v. Kelley,* 158 Cal. App. 4th 1455, 1462

(2008) (the Legislature uses the passive voice when it is agnostic as to the person who must fulfill

a statutory requirement).

The statutory scheme of the Public Utilities Code as a whole is consistent.  *Lungren v.

Deukmejian,* 45 Cal. 3d 727, 735 (1988) ("words must be construed in context, and provisions

relating to the subject matter must be harmonized… each sentence must be read… in the light of

the statutory scheme.…").  Here, Diva expressly alleges that Uber is a transportation company

and that the CPUC has jurisdiction over the services at issue (FAC ¶¶ 4, 86-88, 94), but then

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                          Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1    urges an interpretation of § 17024(1) that would dictate whether, when and how the CPUC should

2    exercise that jurisdiction (*Id.* ¶¶ 36, 79, 83-84).  The CPUC's jurisdiction does not depend on

3    whether the Commission itself sets or approves all aspects of rates charged by a business subject

4    to regulation.  The Public Utilities Code and the California Constitution consistently state that the

5    Commission "may," but need not, "establish rates or charges for the transportation of

6    passengers."  Pub. Util. Code § 728.5; *see also* Cal. Const., Art. XII, §§4, 6 ("The commission

7    may fix rates…for the transportation of passengers and property by transportation companies.").

8            Secondary authorities confirm that § 17024(1)'s UPA exclusion is driven by the CPUC's

9    jurisdiction, not whether, how or to what extent the CPUC actually sets or approves rates:

10                   Section 17024 of the UPA expressly excludes from its coverage the
                     services and products of privately owned public utilities the rates
11                   *for which are within the jurisdiction* of the Public Utilities
                     Commission. It also excludes from its coverage the analogous
12                   services and products of publicly owned public utilities.

13   Cal. Antitrust and Unfair Competition Law, §18.03[C] (2018) (citing *Hladek*).

14                   Nor does [the UPA] apply to any service, article, or product sold or
                     furnished by any public utility corporation or any publicly owned
15                   public utility that is *subject to rate regulation by the Public Utilities
                     Commission* or that would be subject to regulation if furnished by a
16                   public utility corporation, or installation and repair services
                     rendered in connection with such services, articles, or products.
17

18   Cal. Civ. Prac. Business Litigation §60:43 (Exemptions) (2018) (citing § 17024).

19           This reading makes sense.  When the Legislature provides the CPUC with jurisdiction

20   over certain products and services, that invokes the Commission's mission, which includes

21   "protect[ing] consumers," and "assur[ing] Californians' access to safe and reliable utility

22   infrastructure and services."  *See* webpage "Our Mission," California Public Utilities

23   Commission, http://www.cpuc.ca.gov/general.aspx?id=1034 (last visited March 26, 2019).

24   Section 17024 expressly precludes assertion of the UPA to interfere with the CPUC's authority to

25   act—or refrain from acting—based on a court's assessment of matters allegedly within the

26   CPUC's jurisdiction.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                          Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

### 2. *Hladek*, The Only California Precedent Interpreting The UPA Exemption, Strongly Supports Its Applicability Here

*Hladek*, 69 Cal. App. 3d at 589-91, is the only California appellate precedent that addresses § 17024, and it does so decisively.  In *Hladek*, plaintiff sued the City of Merced for predatory pricing under the UPA after it launched a "dial-a-bus, dial-a-ride" service in competition with plaintiffs' taxi and dial-a-bus services.  In holding the exemption applicable, the Court held "[t]he pivotal issue is whether the Public Utilities Commission *would have the jurisdiction to establish the rates for such service.*"  *Id.* at 590 (emphasis added).

Two courts have recently followed *Hladek,* applying its analysis to identical UPA claims brought against Uber.  First, in 2018, the California Superior Court in a coordinated proceeding, *Uber Techns. Pricing Cases*, explained:

> *Hladek* considered only whether the PUC would have had *jurisdiction*; it did not consider whether the PUC did in fact, or would, *exercise* its jurisdiction.  When that analysis is applied to § 17024(1), then the immunity kicks in to the extent the PUC 'does have the *jurisdiction to* establish the rates for such service.'  Uber's reading is correct.  Thus we turn to whether the PUC had *jurisdiction to* establish Uber's rates.

No. CJC-17-004925, 2018 Cal. Super. LEXIS 1913, *7 (Mar. 2, 2018), *appeal docketed,* No. A154694 (First. App. Dist., Div. One) (emphasis added); *see also* ECF. No. 67 (Defs.' Notice of Pendency of Other Actions or Proceedings) at Ex. A.  And, also in 2018, Judge White of this Court, citing *Hladek*, dismissed UPA claims against Uber in two separate actions.  *See Desoto Cab Company, Inc. v. Uber Techs., Inc.,* No. 16-cv-06385, Dkt. No. 64, Order Granting In Part And Denying In Part Defendants' Motion To Dismiss, at 17 (N.D. Cal. Sept. 24, 2018); *A White and Yellow Cab, Inc. v. Uber Techns., Inc.*, No. 15-cv-05163, Dkt. No. 114, Order Granting, In Part, And Denying, In Part, Motion To Dismiss UCL And UPA Claims, at 11-12 (N.D. Cal. Mar. 5, 2018).

### 3. Diva's FAC Alleges CPUC Jurisdiction Over Uber.

Having established that Diva's allegations that "[t]he CPUC has never established the rates charged by Uber or other TNCs or TCPs" (FAC ¶ 89; *see also id.* ¶ 156) are *not* relevant, the dispositive question is whether the CPUC has jurisdiction over Uber.  Diva alleges that it does.

The CPUC is clearly authorized to regulate "charter-party carriers of passengers."  Pub.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

Util. Code §5351, *et seq.* In 2013, the CPUC recognized and exercised its jurisdiction over "transportation network companies" (TNCs) as a subset of charter-party carriers. *See* Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry, Cal. PUC Decision No. 13-09-045 (Sept. 19, 2013) [http://www.cpuc.ca.gov], available at 2013 WL 10230598. The Legislature confirmed the CPUC's authority over transportation network companies by new legislation, effective January 1, 2015. *See* Pub. Util. Code §§5430, 5440. In doing so, the Legislature acknowledged that the CPUC had "already initiated regulation of transportation network companies as a new category of charter-party carriers" and that the Commission "continues to develop appropriate regulations for this new service." Pub. Util. Code §5440(a).

Diva alleges that Uber falls within the definition of a "transportation network company." *See* FAC ¶ 4 (Uber's subsidiaries "are licensed in California [by the CPUC] as Transportation Network Companies . . . [under] Pub. Util. Code § 5431(a)" and "Uber and its subsidiaries also hold licenses as Transportation Charter Party carriers…[under] Pub. Util. Code § 5360."); *see also id.* ¶ 86 ("Rasier-CA, LLC…obtained a TNC license from the CPUC."); *id.* ¶ 87 (UATC, LLC "obtained a TCP permit from the CPUC to operate as a charter-party carrier."); *id.* ¶ 88 ("Uber Technologies Inc. now has an active TCP permit and a pending TNC permit."); *id.* ¶ 94 ("The CPUC has issued a rulemaking, which found that Uber Technologies, Inc. is a transportation company, both as a transportation network company (TNC) and charter-party carrier (TCP).").

And Diva has expressly alleged that Uber is subject to CPUC jurisdiction, including its rules and regulations. *See id.* ¶ 36 ("Except for taxis, public transit, and other service categories not at issue here, 'every [other] person engaged in the transportation of persons by motor vehicle for compensation' in California…must obtain a license from the California Public Utilities Commission."); *id.* ¶ 79 (the CPUC sent cease and desist letters to Uber); *id.* ¶ 83 (the CPUC issued citations to Uber for violating the Public Utilities Code); *id.* ¶ 84 (Uber and CPUC "agreed that Uber would engage in TCP operations that complied with a number of CPUC requirements").

Having repeatedly alleged that the CPUC has jurisdiction over Uber, Diva must live with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1  the consequences.  Its allegations place Uber squarely within Section 17024(1)'s exemption to the

2  UPA, and it has failed to allege any facts to support a reading of its FAC wherein the exemption

3  would not apply.  *Hladek*, 69 Cal. App. 3d at 591 (plaintiffs failed to allege that the provisions

4  governing "charter-party carriers of passengers" were inapplicable, which would have been

5  "essential" in determining "whether [defendant's] business activity is outside the exemption").

6  Here, Diva is in a fatally worse position than the plaintiffs in *Hladek*—it has alleged precisely the

7  opposite, namely, that Uber provides service as a TNC and is subject to the CPUC's jurisdiction

8  and its rules governing charter-party carriers.  As such, there is no circumstance under which

9  Diva could amend its FAC to establish that Uber is somehow outside the statutory exemption.

10  The UPA claim must be dismissed without leave to amend.

11  **B.  <u>Diva Fails To Allege Sufficient Facts To Support Its UPA Claim</u>**

12  Because Diva fails to allege why its UPA claim falls outside of §17024's statutory

13  exemption, the Court need not assess whether the UPA allegations in the FAC are otherwise

14  sufficient to state a claim.  Nevertheless, Diva also fails to meet basic UPA pleading standards,

15  which independently requires dismissal.

16  To state a UPA claim, a plaintiff must allege facts regarding "defendant's sales price, its

17  cost in the product and its cost of doing business."  *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256,

18  275 (1983); *Eastman v. QuestDiagnostics, Inc*., 108 F. Supp. 3d 827, 838 (N.D. Cal. 2015);

19  *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc*., No. 12-cv-05847-JST, 2013 WL 3242245, at

20  *15-16 (N.D. Cal. June 25, 2013).  "And the various costs must be stated in other than

21  conclusory terms."  *G.H.I.I.*, 147 Cal. App. 3d at 275.  Diva fails to meet these standards.

22  <u>First</u>, Diva defines the putative class in terms of "limousine and chauffeur-driven ground

23  transportation" (FAC ¶¶ 46, 47, 57) and references the alleged market for "pre-arranged

24  limousine or chauffeur-driven ground transportation services."  *Id*. ¶ 126.  Moreover, Diva alleges

25  its origins as the limousine service for actress Elizabeth Taylor (*Id*. ¶ 39), presumably to

26  emphasize the premium nature of its service.  But Diva fails to identify the type of rides offered

27  on the Uber platform that are allegedly priced below cost even though Diva identifies a host of

28  Uber products, including two of Uber's own premium products, UberBLACK and UberSUV.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

¶¶ 81-82.  Thus, Diva fails to specify which of Uber's products form the basis of its claim.

Second, there is not a single factual allegation in the FAC about the actual price of any rides, much less the price of rides in California.

Third, Diva fails to allege any specific costs Uber incurs for providing its services, much less the costs Uber incurs in California.  Diva does allege that "California is known as a state in which the costs of doing business are unusually high, especially fuel costs, a substantial input cost for most ground transportation.  It is therefore reasonable to infer that Uber's operations in California are even further below cost than they are nationwide."  *Id*. ¶ 136.  But this vague allegation is inconsistent with the other allegations in the FAC wherein Diva alleges that Uber shifts costs, including the referenced fuel costs, to drivers.  So, for example, the only specific cost allegations in the FAC are limited to costs that ***Uber does not incur***:

- Uber "***avoids***" $9.07/hour in expenses and benefits.  FAC ¶¶ 7, 118 (emphasis added).
- Uber's "total costs ***savings***" in California may exceed $500 million annually.  *Id*. ¶¶ 7, 120 (emphasis added).
- Uber "***saves***" money by evading minimum wage and overtime costs.  *Id*. ¶¶ 112-13 (emphasis added).
- Uber "***avoids***" other costs, including driver work breaks, social security taxes, Medicare taxes, unemployment insurance, worker's compensation insurance, and health care costs.  *Id*. ¶ 114 (emphasis added).
- Uber "***shifts***" vehicle expenses onto drivers.  *Id*. ¶ 142 (emphasis added).

There is no authority for the proposition that a UPA claim can be based on costs not actually incurred (*i.e.*, costs that are *avoided*, *saved* or *shifted* elsewhere).  Indeed, § 17043 on its face prohibits the sale of any product "at less than the cost thereof," not at less than the cost *it should have been*.  Bus. Prof. Code § 17043.

Fourth, Diva appears to rest its theory entirely on vague assertions about alleged losses in Uber's worldwide business operations stemming from the alleged high cost associated with being a "start-up" in growth mode.  *E.g.*, FAC ¶ 135 (alleging that "Uber loses massive amounts of money *overall*") (emphasis added); *id.* ¶ 139 (citing "the cost of *global* marketing" and "market development costs of Uber's expansion into *hundreds of new cities*") (emphasis added).  These

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1    vague allegations of purported overall losses say nothing about the price and cost of Uber's

2    operations in California related to enabling premium transportation services.

3           Courts in the Ninth Circuit consistently dismiss UPA claims that fail to allege sufficient

4    information about alleged sales price, the cost of the product, and the cost of doing business.  *See*

5    *Eastman,* 108 F. Supp. 3d at 838 (dismissing UPA claim for failure to allege defendant's prices or

6    costs); *Medina v. Microsoft Corp.*, No. 14-0143, 2014 U.S. Dist. LEXIS 119316, at *16 (N.D.

7    Cal. Aug. 26, 2014) (dismissing UPA claims for insufficient allegations and noting that plaintiff

8    "ought to be capable of…mak[ing] reasonable allegations on information and belief regarding

9    [defendant's] sales price, product cost, and cost of doing business"); *Code Rebel, LLC v. Aqua*

10   *Connect, Inc.*, No. 13-4539, 2013 U.S. Dist. LEXIS 137937, at *23 (C.D. Cal. Sept. 24, 2013)

11   ("Plaintiff has completely failed to allege [d]efendant's sales price, its cost in the product, and its

12   cost of doing business" when it only provided a "bare allegation that [d]efendant sold…at a price

13   below cost").  Because Diva does not allege any well-pled facts about Uber's prices and costs, its

14   UPA claims must be dismissed.[4]

15          **C.     Diva's UCL Claim Is Still Defective**

16          Diva brings its UCL claim under the "unlawful" and "unfair" prongs.  Despite voluntarily

17   amending in response to Uber's first motion to dismiss, both theories still fail to state a claim.

18                 **1.     Diva Fails To Allege Uber's Conduct Is "Unfair" Under The UCL**

19          Diva's UCL claim premised on the "unfair" prong fails from the start because Diva

20   complains of *more*, not less, competition.  "When a plaintiff who claims to have suffered injury

21   from a direct competitor's 'unfair' act or practice invokes section 17200," as Diva does here, "the

22   word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law

23   … or otherwise significantly threatens or harms competition."  *Cel-Tech Commn'ns, Inc. v. Los*

24

---

25   [4]  Diva's FAC also implicates Public Utilities Code §1759(a), which withdraws jurisdiction from
     trial courts to entertain cases where an adjudication would "interfere with" the CPUC's
26   jurisdiction.  The California Court of Appeal recently applied §1759(a) to dismiss a multi-faceted
     complaint against Uber relating to CPUC rules and regulations.  *Goncharov v. Uber Techs., Inc.*,
27   19 Cal. App. 5th 1157 (2018).  To the extent Diva asks the Court to alter the evolving regulatory
     landscape, that would violate §1759(a) and eliminate jurisdiction.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                   17                        Case No. 3:18-cv-05546-EMC
              DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
              FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

*Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999).  Diva's UCL claim, however, is premised on Uber allegedly entering the market by violating labor laws, which allows it to compete with a lower cost structure, operate more efficiently, and charge lower prices.  FAC ¶¶ 111-121, 125.  The Complaint openly concedes that Uber has benefited consumers with lower prices.  FAC ¶ 125.  Thus, Diva alleges its "injury" results from *more* competition, not less, which is not a type of injury that can be redressed under the antitrust laws.  *See Brooke Grp. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 226 (1993) ("[C]utting prices in order to increase business often is the very essence of competition.") (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 122 n.17) (1986)); *Cascade Health Sols. v. PeaceHealth,* 502 F.3d 895, 912 (9th Cir. 2007) ("[T]he antitrust laws' prohibitions focus on protecting the competitive process and not on the success or failure of individual competitors."); *Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 344 (3d Cir. 2018) ("Appellants allege their own injury, namely, financial hardship.  Tellingly, they fail to aver an antitrust injury, such as a negative impact on consumers or to competition in general, let alone any link between this impact and the harms Appellants have suffered.").

Because Diva's UCL claim is based on conduct that has led to more competition—which the antitrust laws are designed to protect—that conduct does not "threaten an incipient violation of an antitrust law," and is not "unfair" under the UCL.[5]

### 2.    Diva Lacks Standing To Bring A Claim Under The "Unlawful" Prong

#### a.    Diva's Failure To Allege Causation Defeats The Entire Claim

Diva's entire UCL claim must be dismissed because it fails to adequately allege the required causation under Article III.  *Lujan*, 504 U.S. at 560-61.  The factual allegations in the

---

[5] The "unfair" prong cannot be premised on competition policies embodied by the UPA because that statute does not apply here.  *See* Section V.A., above.  Where alleged conduct does not violate the antitrust law, an "unfair" claim under the UCL based on the same conduct cannot survive.  *ChriMar Systems, Inc v. Cisco Systems, Inc.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).  It would also be contrary to the policy embodied by the exemption in Section 17024 if Diva could maintain a UCL claim based on alleged violations of an inapplicable statute.  *See Uber Techs. Pricing Cases*, 2018 Cal. Super. LEXIS 1913, *8 n. 9, *also available at* ECF No. 67, Ex. A at 6 n. 9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

complaint regarding Diva's *UPA* claim break any causal connection between the UCL violation it has alleged and any purported injury to putative class members.  "When a UCL action is based on an unlawful business practice…a party may not premise its standing to sue upon injury caused by a defendant's …unlawful practice that does not otherwise affect the party.  In short, there must be a causal connection between the harm suffered and the unlawful business activity." *Rooney v. Sierra Pac. Windows,* No. 10-CV-00905-LHK, 2011 WL 5034675, *11 (N.D. Cal. Oct. 11, 2011) (citing *Daro v. Superior Ct.,* 151 Cal. App. 4th 1079, 1099 (2007)).  "That causal connection is *broken* when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Id.* (emphasis added).  "Thus, at a minimum…to establish standing under the UCL, Plaintiff must allege that [it] would not have suffered the same harm had [Defendant] complied with [the laws]." *Id.*; *see also Haynish v. Bank of America, N.A.*, 284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) ("A plaintiff fails to satisfy the causation prong...if he or she would have suffered the same harm whether or not a defendant complied with the law.") (citations omitted).

Diva's UCL theory is that, by misclassifying drivers as independent contractors rather than as employees, Uber has violated California labor laws and thereby harmed Diva by gaining an unfair cost advantage.  *See, e.g.*, FAC ¶ 112 ("Uber saves a massive amount of money by evading the many responsibilities that the law imposes on employers."); ¶ 125 ("[Driver] misclassification allows Uber to lower prices, which in turn has taken and threatens to continue to take market share from Uber's direct competitors, including Plaintiff.").  The fatal flaw in Diva's theory, however, is that it *also* alleges, in support of its UPA claim, that "Uber priced its rides at a level that is far below its total average costs attributable to those rides" and that "Uber has consistently lost massive amounts of money." *Id*. ¶¶ 129, 131.  Diva claims that Uber is "subsidizing rides," and that the "only rational purpose" of doing so is "to be able to raise prices down the road … by driving enough competitors out of business that normal market forces will not preclude higher prices in the future." *Id*. ¶ 146.  According to Diva, Uber is using "$13 billion in cash its investors provided … to subsidize the many years of predatory competition required to drive out more efficient incumbents." *Id*. ¶ 147.  Thus, Diva alleges, "Uber is using

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1   cash as a competitive weapon." *Id.* ¶ 149.

2          These allegations—though disputed by Uber—break any causal link between the alleged

3   UCL violation and any alleged injury to putative class members.  Diva's allegations on their face

4   dictate that Diva would suffer the same injury (lost rides) regardless of whether or not Uber had

5   committed a UCL violation (alleged driver misclassification).  *Id.* ¶¶ 14, 146, 150-51, 163.

6   Indeed, as alleged, it is the "billions of dollars of subsidies" that supposedly allow Uber to price

7   below cost.  *Id.* ¶ 14.  Thus, any asserted causal link between the alleged misclassification and the

8   lower prices that allegedly caused Diva to lose business is contradicted by Diva's own FAC.

9          In similar circumstances, this Court found the causal link between an alleged code

10   violation and injury to Uber's competitors based on an unfair competitive advantage to be

11   lacking: "We do not know … how much, if at all, Uber's pricing of rides will be affected, and

12   whether any change in Uber's pricing will affect Plaintiff's business."  *Overton v. Uber Techs.,*

13   *Inc.*, 333 F. Supp. 3d 927, 947 (N.D. Cal. 2018).  Indeed, if prices are lowered due to "a cash

14   inflow from some other source," then a "plaintiff[] fail[s] to adequately allege a causal connection

15   between reduced market prices" and a defendant's alleged unlawful conduct.  *Id.* (quoting *Anza v.*

16   *Ideal Steel Supply Corp.,* 547 U.S. 451, 458-59 (2006)); *see also Canyon Cty. v. Syngenta Seeds,*

17   *Inc.*, 519 F.3d 969, 983 (9th Cir. 2008) (holding that the asserted causal chain "is quite

18   attenuated" if there are "numerous alternative causes that might be the actual source or sources of

19   the [plaintiff's] alleged harm.").

20          Here, Diva affirmatively alleges that something other than driver misclassification

21   (namely, alleged investor subsidies) is the "actual source" of Uber's low—indeed, allegedly

22   below-cost—prices.  The relief that Diva seeks—an injunction that classifies drivers as

23   employees—would do nothing to impact the alleged investor subsidies and thus is unlikely to

24   redress the alleged harm, as is required to establish Article III standing.  *See Overton*, 333 F.

25   Supp. 3d at 940 (citing *Lujan*, 504 U.S. at 561 ("[Plaintiffs] must allege that it is likely, as

26   opposed to merely speculative, that the injury will be redressed by a favorable decision."))

27   (quotations omitted).  Diva has pled itself out of a UCL claim.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                                    Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

**b.**     **Diva's Allegations Regarding Out-of-State Limousine Companies Raise Causation Issues Unique To The Affiliates**

The UCL claim for purported out-of-state affiliates fails because additional intervening factors necessarily break any plausible causal chain between alleged misclassification in California and injuries suffered by affiliates located in other states.  Moreover, if the cause of the purported injury occurred outside of California, the UCL would not apply, as "California has a strong presumption against extraterritorial application of its laws."  *Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018) (*citing North Alaskan Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)).[6]

Diva includes in its UCL class definition "business entities *outside of California* that earned revenue from the provision of limousine or chauffeur-driven ground transportation services in California *through affiliate relationships*."  FAC ¶ 48 (emphasis added).  Diva alleges that companies in the limousine and chauffeur-driven transportation industry "form interstate affiliate relationships that allow their clients to book rides outside a company's service area, including in other states."  *Id.* ¶ 44.  It further alleges that "scores of non-California limousine companies farmed out business to Plaintiff, so that their out-of-state clients could use Plaintiff's services for rides in the Los Angeles area."  *Id.* ¶ 45.  But neither these scant allegations nor any other assert a plausible causal connection between Uber's alleged misclassification of drivers *in California* on the one hand, and *out-of-state* clients no longer contacting *out-of-state* limousine companies to book rides when they travel to California on the other.

In order to "farm out" rides to California limousine companies, an out-of-state client must first contact an out-of-state affiliate for the purpose of arranging a ride in California.  FAC ¶¶ 44-45.  Thus, according to Diva's own allegations, the claims by out-of-state affiliates require an extra step in the already-speculative causal chain.  To establish Article III standing for this scenario, Diva must allege non-speculative facts showing a "substantial likelihood" that Uber's

---

[6] "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially.  Accordingly, the presumption against extraterritoriality applies to the UCL in full force."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    conduct *in California* was the cause of an out-of-state client declining to contact an out-of-state

2    affiliate. *Duke Power Co. v. Carolina Envtl Study Group, Inc*., 438 U.S. 59, 75 n.20 (1978); *see*

3    *also Habecker v. Town of Estes, Colo.,* 518 F.3d 1217, 1225 (2008) ("speculative inferences" are

4    insufficient to meet the Article III causation burden) (quoting *Simon v. Eastern Ky. Welfare*

5    *Rights Org.*, 426 U.S. 26. 45 (1976). To the extent out-of-state clients decline to contact out-of-

6    state affiliates in the first instance, leading to those out-of-state limousine companies losing the

7    opportunity to "farm out" such clients to California limousine companies, the only plausible, non-

8    speculative reason is due to competition from Uber (or others, such as Lyft) *in those other states*.[7]

9          For example, if a New York limousine company lost business from a New York client to

10   Uber, that lost business logically flows from competition with Uber *in New York*, not California,

11   even if that New York limousine company occasionally refers rides to an "affiliate" in California.

12   Diva claims its New York affiliates have lost clients because of Uber's low prices, but even if

13   true, the cause is Uber's low prices *in New York*, not any purported misclassification of drivers in

14   *California*. The same is true for Diva's alleged affiliates in every state other than California. *See*

15   FAC ¶ 45. Because competition from Uber outside California would be the cause of any alleged

16   lost revenue by affiliates, Diva's UCL claim on behalf of those affiliates is untenable as Diva has

17   not alleged—and cannot allege—a causal connection between asserted *California*

18   misclassification and any injury allegedly suffered by an affiliate. The UCL claim on behalf of

19   out-of-state affiliates should be dismissed for this independent causation defect.[8]

20   **VI.    IF THE COURT DISMISSES THE CLAIMS OF OUT-OF-STATE AFFILIATES
21          IT MUST DECLINE TO EXERCISE JURISDICTION UNDER CAFA'S "HOME-
              STATE CONTROVERSY" EXCEPTION**

22         If the Court allows any of the claims of California limousine companies to go forward, but

23   dismisses the claims of out-of-state affiliates, the Court must dismiss the action under CAFA's

24   "home-state controversy" exception. Here, where it is alleged that each of the Defendants is a

25   citizen of California for purposes of CAFA jurisdiction, the applicability of the "home-state

26

27   [7] Indeed, Diva alleges that limousine companies across the country report "losing business" due
     to competition from Uber. FAC ¶ 46.

28   [8] Diva's UPA claim on behalf of affiliates suffers from the same fatal causation defect.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22                                   Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

controversy" exception hinges upon the determination of whether two-thirds or more of Diva's proposed classes are *also* California citizens for purposes of diversity analysis. *See* FAC ¶¶ 17-21. If they are, then the exception applies.

Diva bases CAFA jurisdiction solely upon the inclusion of out-of-state affiliates. *See id.* ¶ 29. If the claims of those affiliates are dismissed from the case (as they should be), far more than two-thirds of the remaining purported class members are also California citizens, implicating the "home-state controversy" exception. There is no suggestion in the Complaint that the "business entities that provided limousine and chauffeur-driven ground transportation services within California" (*Id.* ¶¶ 48, 58) are somehow citizens of other states. Because the locus of this class definition is on rides provided *in California*, a common sense reading is that the providers of rides in California are limited to only, or nearly only, California citizens. *See Cortez v. McClatchy Newspapers, Inc.*, No. 2:15-cv-01891-TLN-EFB, 2016 WL 3181200, at *6 (E.D. Cal. June 7, 2016) ("[T]he Court agrees that it is commonsensical that a class of '[a]ll persons in California' who subscribed to local California newspapers would likely consist of at least two-thirds California citizens."); *Quesada v. Herb Thyme Farms Inc.*, No. CV 11-0016 ODW SSX, 2011 WL 1195952, at *4 (C.D. Cal. Mar. 28, 2011) ("proposed class is limited to purchasers within California" when class defined as "[a]ll persons within the state of California" that purchased certain herbs); *Rotenberg v. Brain Research Labs LLC*, No. C-09-2914 SC, 2009 WL 2984722, at *2 (N.D. Cal. Sept. 15, 2009) (when claims brought "on behalf of California purchasers," then "greater than two-thirds of the members" are presumptively California citizens).

## VII.   LEAVE TO AMEND SHOULD NOT BE GRANTED

"[A]t the time Plaintiffs filed their FAC, Plaintiffs had been made aware of the significant pleading deficiencies addressed above; nevertheless, Plaintiffs made only meager factual amendments to their [] claim[s] that largely failed to address the more basic pleading failures." *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, No. 11-cv-01860, 2012 WL 1669726, *12 (C.D. Cal. May 14, 2012). Here, Diva itself recognized the pleading deficiencies detailed in Uber's original motion to dismiss and chose to amend rather than defend its original complaint. But Diva's FAC remains fatally deficient. The Court should therefore dismiss the FAC with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

Case No. 3:18-cv-05546-EMC

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)

1   prejudice.  *Id.*; *see also Garon v. eBay, Inc.*, No. 10-05737, 2011 WL 6329089, *5, 10 (N.D. Cal.

2   Nov. 30, 2011) (after voluntary amendment, dismissal of Sherman Act, UCL and other claims

3   with prejudice because further amendment would be futile).

4   **VIII.**   **CONCLUSION**

5         Diva has failed to allege minimal diversity.  As such, the FAC once again fails to establish

6   subject matter jurisdiction and should be dismissed.  If the Court reaches the sufficiency of Diva's

7   two claims, each fails, also requiring dismissal.  Finally, the unique standing and causation

8   problems for out-of-state affiliates necessarily implicate the "home-state controversy" exception

9   under CAFA, as this action (if it survives at all) would involve only California citizens.  The

10  Court should therefore decline to exercise subject matter jurisdiction under 28 U.S.C. §

11  1332(d)(4)(B).

12  Dated: March 28, 2019                              __/s/ *Brian C. Rocca*_____
                                                        Brian C. Rocca
13
                                                        MORGAN, LEWIS & BOCKIUS LLP
14                                                      *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24                              Case No. 3:18-cv-05546-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)